*J. B. G. Logan* and *S. R. Jolly,* contra.

---

### COLQUITT COUNTY *v.* BAHNSEN, State Veterinarian.

1. Where a proceeding was brought by Colquitt County against the State Veterinarian, to compel the latter to eradicate, at the expense of the State, cattle-fever ticks from said county, the same having become reinfested after the county had previously become tick-free and the county released from all State and Federal quarantine, the petition for mandamus alleging that it was the duty of the State Veterinarian to effect such eradication at the expense of the State; and where the bill of

exceptions recites that on the hearing of the application for mandamus it was agreed between the parties that the question to be determined by the court was one of law, the defendant admitting the substantial allegations of the petition for mandamus, and where it appears from the transcript of the record that the defendant in his answer set up that the expense of repairing and providing vats and the proper chemicals necessary for effecting such eradication should be borne by the county, and where the trial judge refused to grant a mandamus absolute, to which judgment the county excepted on the ground that it is contrary to law, such assignment of error is sufficiently specific; and the bill of exceptions will not be dismissed upon the ground that it does not distinctly specify the error alleged to have been committed by the trial court.

2. After a county had completed tick-eradication under the act of August 17, 1918 (Acts 1918, p. 257), which fact was evidenced by the complete release of the county from all State and Federal quarantine restrictions, and where such county subsequently became reinfested with such tick, it is the duty of the State Veterinarian, at the expense of the State and without expense to the county, to eradicate such tick from said county under the act of August 18, 1924 (Acts 1924, p. 78); and upon his failure and refusal to discharge this duty its performance will be compelled by mandamus.

No. 5260.   JUNE 18, 1926.

Petition for mandamus. Before Judge Humphries. Fulton superior court.   December 21, 1925.

*James L. Dowling* and *J. O. Gibson,* for plaintiff.

*George M. Napier, attorney-general,* and *T. R. Gress, assistant attorney-general,* for defendant.

HINES, J.   Colquitt County filed its petition against Peter F. Bahnsen as State Veterinarian, and made these allegations.   In 1923, after the authorities in Colquitt County had been dipping cattle for the eradication of cattle-fever ticks for several years, said county was declared by the proper authorities to be free from cattle-fever tick infestation, and said county was relieved from all State and Federal quarantine restrictions.   Such release was made under the special direction and instruction of Bahnsen as State Veterinarian.   In August, 1925, said officer discovered a reinfestation of such tick in that portion of said county which adjoins Thomas County.   Thereupon said officer quarantined all sections of said County of Colquitt.   Such quarantine restrictions are still in existence, and are being rigidly enforced by said officer by his agents and representatives.   Said officer is charged by law with the duty of eradicating cattle-fever tick from such reinfested area, at the expense of the State and without expense to the county.   He

fails and refuses to eradicate such tick from such reinfested area in Colquitt County, refuses to pay the expense thereof, refuses to permit the State to pay the same, and refuses and declines to pay said expense out of an appropriation of $25,000 made to him and the Department of Agriculture by the General Assembly of the State by an act approved August 18, 1924, for the sole purpose of executing the provision of said act which imposes the duty of eradicating cattle-fever tick from all reinfested areas upon said officer and the Department of Agriculture at the expense of the State and without expense to the county. The reinfested area consists of a small part of Colquitt County lying along the Thomas County line. Said officer has made a diligent search in other portions of the county, but has been unable to discover that any other section of the county has been reinfested. Notwithstanding this fact he has, without just cause or reason, placed quarantine restrictions throughout the entire area of said county, and thrown about its boundaries such regulations as make it impossible for the people in said county to travel with any kind of teams beyond the lines of the county, and for any one outside of said county to come into the same with any kind of live stock, including horses and mules. Said quarantine restrictions are working a serious hardship to the people of the county and to petitioner. Such restrictions are not warranted by the facts, are unauthorized by law, and are not founded upon a proper spirit of co-operation, fair dealing and justice, and as enforced by such officer constitute an oppression of the people by a public officer. Petitioner prays that he be required to show cause why a mandamus should not be issued against him, requiring him to do all the work of eradication of cattle-fever tick from said reinfested area at the expense of the State, and that he eradicate said cattle-fever tick from said reinfested area without expense to the county; that on the hearing the mandamus be made absolute, and that he be required to do the things prayed for above; and that he be required to release all portions of Colquitt County from quarantine restrictions, except that portion thereof which has been declared to be reinfested with cattle-fever tick.

In his answer the defendant admitted all of the allegations of the petition, except as herein stated. He denied that upon the discovery of the reinfestation of the county with cattle-fever tick

he quarantined all sections of said county. On said discovery his representative called on the commissioners of the county, and requested them to repair the dipping-vats located in the infested area, and fill them with arsenical solution as required by law, in order that he, with the inspectors appointed by him, at the State's expense, might check up, locate, and eradicate said reinfestation, as required by law. The county commissioners advised his representative that, on the advice of their counsel, they declined to repair the vats and supply the arsenical solution as aforesaid. Thereupon he went to Colquitt County in person and called on its board of commissioners. The chairman of the board stated that it was acting upon the advice of its attorney. He then called upon the county attorney, who stated that he declined to change his advice to the board. Defendant pointed out to said attorney that unless the State had the co-operation of the county commissioners, as required by law, defendant would be compelled to quarantine the county, in order to protect the adjoining counties from the reinfestation of the cattle-fever tick. Whereupon the attorney told him to go ahead and quarantine, that he would make him take it off. Mindful of the great inconvenience resulting from a general quarantine, the defendant did not issue a general quarantine order at that time, but undertook to advise the people who would be most seriously inconvenienced by the quarantine to call on their county commissioners and urge them to co-operate with the State, in order that the fever-tick reinfestation in the county might be located and eradicated. A number of influential citizens called upon the county commissioners and urged them to so co-operate, but their attorney advised them not to do so. In the meantime fever-tick infestation in the county continued to spread, and adjoining counties demanded of this defendant protection against reinfestation from Colquitt County. On November 3, 1923, after all efforts to have the Colquitt County commissioners repair the vats and charge the same with arsenical solution, as required by law, had failed, the defendant placed Colquitt County under quarantine. Subsequently said commissioners made a few vats available, but many more were needed to check the prevailing fever-tick reinfestation on the open ranges of the county.

The defendant further set up that under section 2 of the act of August 18, 1924 (Georgia Laws 1924, p. 79), and under the act

of August 17, 1918, known as the State-wide tick-eradication act, counties are required to furnish the dipping-vats and the arsenical solution necessary for the eradication of the cattle-fever tick in reinfested districts, and that the State is only required to pay for the services of inspectors; and that since reinfestation was discovered in the county he has had, and now has, in the county as many men as can be used advantageously in the service of fever-tick eradication, and when more adequate equipment is made available by the county, as required by law, additional men will be assigned to the work. He denied the allegation that only a small strip of Colquitt County was reinfested, but on the contrary averred that fever-tick infested cattle were found within five miles of the county seat. The extent of the infestation can not be determined until the range cattle have been rounded up and dipped; and as soon as the county commissioners make available dipping vats, as required by section 2 of the act of 1918, this will be done.

At the hearing of the application for mandamus "both sides agreed that the sole question involved by the petition and answer in said case was a question of law for determination by the court, it being admitted by the defendant in said case that all of the material allegations of the petition were true." The judge denied the mandamus absolute. "To this ruling, order, and judgment of the court, in denying the rule absolute and finding for the defendant, the plaintiff therein, Colquitt County, then and there excepted and now excepts, and assigns said ruling, order, and judgment as error, as being contrary to law, and contends that the court should have granted a rule absolute in said case, as prayed for in the petition." The defendant moved to dismiss the bill of exceptions, upon the ground that it did not distinctly specify the errors complained of.

1. The bill of exceptions does not expressly state what was the question of law which the court had to determine; but in effect the question submitted to the court was whether the county, under the allegations of its petition, was entitled to the mandamus sought. In other words, the question for decision by the court was whether, under the allegations of the petition, the county was entitled to the relief which it sought. The trial judge denied this relief. · To his judgment denying to the county the mandamus absolute the county excepted on the ground that it is contrary to

law. We think that this assignment of error, although meager, is sufficient. The assignment of error that a ruling or judgment is contrary to law is an every-day occurrence in appellate practice. It is true that "Bills of exceptions must distinctly specify the points on which error is assigned." Civil Code (1910), § 6224. A "bill of exceptions shall specify plainly the decision complained of, and the alleged error." § 6139. In this case the bill of exceptions specifies plainly the decision complained of, that is, the judgment of the court denying the plaintiff a mandamus absolute. It likewise specifies plainly the error alleged, that is, that this judgment of the court is contrary to law. By express statute it is provided that "It shall be unlawful for" this court "to dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to" this court, "where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided therein." Civil Code (1910), § 6183. There is enough in the bill of exceptions and the transcript of the record, when taken together, to enable this court to ascertain substantially the real question in the case which was submitted to the trial judge and which the parties seek to have determined. For this reason we decline to dismiss the writ of error.

2. The question for our determination is whether, after cattle-fever ticks have been eradicated, under the act of August 17, 1918, commonly known as the State-wide tick-eradication act, and there has been a complete release of all State and Federal quarantine regulations, and there has been a reinfestation of the tick-free county, the State or the county shall bear the expense of providing or repairing necessary vats and furnishing the arsenical solution required in the eradication of ticks from such reinfested area. The county contends that this expense must be borne by the State. The State Veterinarian asserts that it must be borne by the county. By section 2 of the act of August 17, 1918, it is provided, "That on or before the first day of April, 1919, the ordinary, county commissioners, or officers in charge of the county affairs in each and every county where tick eradication has not been completed shall construct such number of dipping-vats as may be fixed by the State Veterinarian, or his authority, and provide the

proper chemicals and other materials necessary to be used in the systematic work of tick-eradication in such counties, which shall begin on said date or such subsequent date as may be fixed by the State Veterinarian, with the approval of the Commissioner of Agriculture." Upon the failure, refusal, or neglect of the county officers to construct such vats and provide such chemicals and materials, it is made the duty of the State Veterinarian to apply to a court of competent jurisdiction for a writ of mandamus, or he shall institute such other legal proceedings as may be necessary and proper to compel such officials to comply with the above requirements. Acts 1918, p. 256; 8 Park's Code Supp. 1922, § 2084(e). As the eradication of these ticks had been completed in 1923, prior to the institution of this litigation in 1925, it is presumable, if not manifest, that the county authorities had provided the necessary vats and chemicals for the eradication of this pest in this county. Now, if under the above section of the act of 1918, after the complete eradication of these ticks in a county, there is a reinfestation of this deadly parasite, is the county then required to repair the original vats or provide new ones, and furnish the chemicals which may be necessary for their eradication? Under the terms of said section the county authorities are only required to construct dipping-vats and to furnish chemicals and other materials necessary to be used for the initial work of tick eradication in the counties of this State. After the completion of such initial work, the act of 1918 did not provide for tick eradication in the event of subsequent infestation. The legislature does not seem to have contemplated that further eradication would be necessary by reason of subsequent infestation. To provide for the eradication of ticks in case of subsequent infestation, the legislature passed the act of August 18, 1924, p. 78. Section 2 of this act provides, "That after a county has completed tick-eradication as evidenced by complete release of all State and Federal quarantine restrictions, any subsequent reinfestation of the tick-free area shall be eradicated by the State Veterinarian at the expense of the State and without expense to the county, as at present provided in section 3 of the act approved August 17, 1918, commonly known as the State-wide tick-eradication act." What is the meaning of this section of the act of 1924? When we look to the act of 1918, we find no provision for the eradication of these pests at the ex-

pense of the State alone.  Section 3 of the act of 1918 provides that "The several counties shall provide and pay the salaries of the necessary number of local county inspectors, ' or agents, to assist in this work, who shall be appointed by the county officials in charge of county affairs, subject to the approval of the State Veterinarian, and commissioned by him; the salaries of such inspectors shall be fixed by the county authorities, and shall be sufficient to insure the employment of competent men.  The State Veterinarian shall be empowered to employ at least one State inspector, whose duty it shall be to inspect the work of the county inspectors, or to do any special work at any time and place when directed by the State Veterinarian, and who shall be paid from the funds appropriated by the State of Georgia for the work of tick-eradication."　Acts 1918, p. 256; 8 Park's Code Supp. 1922, § 2084(f).　By the terms of this section the counties pay the salaries of the county inspectors or agents.  The State pays the salary of the State inspector.

The contention of the State Veterinarian is, that, construing section 2 of the act of 1924 and section 3 of the act of 1918 together, the State is only liable for the salaries of the necessary number of local county inspectors or agents who may be employed in doing this work, and whose salaries .were to be paid by the counties under the provision of section 3 of the act of 1918.　He bases this contention upon the language "as at present provided in section 3 of the act approved August 17, 1918, commonly known as the State-wide tick-eradication act," which he construes to mean that the State shall only provide for the salaries of the inspectors or agents whose salaries under section 3 of the act of 1918 had to be paid by the counties.  We do not agree to this contention and to this construction of the above language. Under section 2 of the act of 1924 it is declared that "any subsequent reinfestation of a tick-free area shall be eradicated by the State Veterinarian at the expense of the State and without expense to the county."　Standing alone this language puts upon the State the whole expense of eradicating any subsequent reinfestation of a tick-free area.  It is to be done without expense to the county. It is thus to be done not partly at the expense of the State and partly at the expense of the county.  The language, "as at present provided in section 3 of the act approved August 17, 1918," refers

to the funds with which the expense of eradicating ticks from a tick-free county which subsequently becomes reinfested shall be paid, and provides for payment of said expense from the funds appropriated by the State for the work of tick-eradication. It has no reference to the payment of any part of the expense of such eradication by the counties. This section of the act of 1918 provided for the payment of that portion of the expense placed upon the State from funds appropriated by the State for the work of tick eradication. The meaning of the above language of section 2 of the act of 1924 is to provide for the payment of the expense of eradicating ticks thereunder from funds appropriated by the State for that purpose. To give this language the meaning contended for by the defendant would require the State to pay only a part of the expense of said work, and, instead of requiring it to be done "without expense to the county," would make the county liable for a part of such expense. We think the true meaning of section 2 of the act of 1924 is to place upon the State the entire expense of eradicating any subsequent reinfestation of a tick-free county. This construction is strengthened by the language of the caption of the act of 1924. That caption in part is "to provide for the eradication, by the State Veterinarian, at the expense of the State, without expense to the county, of any subsequent reinfestation of the tick-free areas in any county that has completed tick-eradication." While the caption of an act is no part thereof, it can be looked to in interpreting the body of the act. *Standard Steel Works Co.* v. *Williams,* 155 *Ga.* 177, 182 (116 S. E. 636). This construction of section 2 of the act of 1924 is further strengthened by the fact that the legislature appropriated the sum of $25,000 for each of the years 1924 and 1925, "for the purpose of executing the provisions of this act." As the court below put the wrong construction upon section 2 of the act of 1924, we reverse the judgment in this case.

*Judgment reversed. All the Justices concur.*