## GILL *et al. v.* COX *et al.*

1. The questions for decision in this case are not moot, and the bill of exceptions will not be dismissed.

2. After a county had completed tick eradication under the act of August 17, 1918 (Acts 1918, p. 256), as evidenced by the complete release of all State and Federal quarantine restrictions, and the county subsequently became reinfested with these parasites, under section ·2 of the act of August 18, 1924 (Acts 1924, p. 78), it was made the mandatory duty of the State veterinarian to eradicate these pests; and this he was required to do without the previous determination of the commissioner of agriculture that such eradication was wise and best.

3. Where an owner of cattle, horses, or mules infected with cattle-tick fails or refuses, after due notice, to dip such animals. as provided by the act of 1918 or the act of 1924, such animals shall be placed in quarantine and dipped and cared for at the expense of the owner by the local inspector.

(*a*) Any expenses incurred in dipping and caring for such animals constitute a lien thereon; and should the owner fail or refuse to pay said expenses, after three days notice, the animals shall be disposed of as provided by section 2034 of the Civil Code of Georgia, so far as said section refers to advertising and other proceedings to sell.

(*b*) When the local inspector impounds such animals for the purpose of dipping the same, and the owner fails or refuses to pay the expense of caring for and dipping such animals, after three days notice, and the local inspector and the owner can not agree upon the amount of such expense, or the owner fails to pay such expense, the local inspector must institute a proceeding before the justice of the peace of the district, and if there is no justice of the peace in the district, then before the most convenient justice, to have ˙adjudicated the amount of such expenses, the owner of the animals having the right to replevy the same by giving the bond provided for in said section. The local inspector would not be authorized to sell such animals for the purpose of recovering such expenses, except under a judgment obtained in such proceeding.

(*c*) Section 4 of the act of August 17, 1918 (Acts 1918, p. 256), when construed in connection with section 2034 of the Civil Code of 1910, furnishes the only remedy by which the local inspector can prosecute his claim for expenses incurred by dipping and caring for such animals, and in defense of such proceeding by the local inspector the owner has an ample remedy for contesting the amount of expense claimed by the local inspector. This being so, section 4 of said act is not unconstitutional upon the ground that it denies to the owner of animals so impounded due process of law.

4. The allegations of the petition, when construed most strongly against the plaintiffs, did not show that the defendants were enforcing the provisions of section 4 of the act of 1918 in an arbitrary and unreason-

Animals, 3 C. J. p. 55, n. 42· New.
Appeal and Error, 4 C. J. p. 327, n. 98 New.
Evidence, 22 C. J. 392, n. 97.
Pleading, 31 Cyc. p. 78, n. 95.

able manner, as contended by plaintiffs, and that for this reason the administration of this section is unconstitutional upon the ground that it deprives the plaintiffs of due process of law, as plaintiffs claim.

(a) The allegations upon which this contention rests are statements of facts made by the State veterinarian and his employees, during the initial eradication of cattle-tick in the county, which, if true, would show an arbitrary and unreasonable administration of this law; but the petition does not allege that this statement of these facts is true, in consequence of which there are no facts properly pleaded which show the arbitrary and unreasonable execution of the provisions of this statute.

(b) Such statements do not amount to admissions binding upon the public, as the officers making them did not do so in the exercise of any power conferred on them by law.

No. 5465. JANUARY 15, 1927. REHEARING DENIED FEBRUARY 19, 1927.

Equitable petition. Before Judge Sheppard. Bryan superior court. May 18, 1926.

On December 21, 1925, W. W. and L. C. Gill filed their petition against Herman Cox and others, and made the following allegations: Petitioners are residents, cattle-owners and taxpayers of Bryan County. Said county was released from the State and Federal quarantine restrictions under the Statewide tick-eradication act during the year 1923, and the entire State was released on December 15, 1924. Notwithstanding said release, the defendants, about three months ago, purporting to act by authority of the State veterinarian, and claiming that said county had been reinfested by fever-ticks, began to dip the cattle throughout the county, including those of petitioners. During the time when said county was under quarantine for fever-ticks, and the cattle therein were in process of being dipped under authority of the State veterinarian, it was stated by him and his employees that it was unwise to dip cattle through the winter months of December, January, February, and March, for the reasons that during said months cattle which ran at large in said county sought cover in the deepest parts of the swamp, and therefore all of the cattle could not be procured to be dipped, as a great part of said county is in impenetrable swamp; because said cattle become more or less weak and emaciated during the winter months, and the dipping of them produces a very high percentage of mortality; because during the latter part of the winter said cattle become so weak that when put in the vat they have not strength enough to get out; and because during the winter months fever-ticks are

more or less dormant, and their eradication can not be completed without the necessity of destroying a large percentage of the cattle dipped. Defendants threaten to continue said dipping regularly throughout the entire winters of 1925 and 1926. The State commissioner of agriculture has not complied with section 2079 of the Code of Georgia, in that he has failed to give the notice provided for in that section, to the effect that he has judicially determined that it is wise and best to take up the work of cattle-tick eradication in said county, which is a necessary condition precedent to the going into operation of the provisions of law relating to cattle-tick eradication. The dipping done and proposed to be continued by defendants is being had in part at the expense of the county, the defendants insisting that the county, through its commissioners, shall maintain and repair vats and provide the cattle-dip required, and threatening that if the county shall discontinue at any time to do these things they will maintain only one dipping-point in the entire county, without regard to the prohibitive expense to which each of petitioners and other cattle-owners in the county would thereby be put, requiring them to bring their cattle from great distances to the dipping-point. Such expense would be greater than the value of the cattle involved. Said acts of said defendants are violative of the provisions of section 2 of the act published in Georgia Laws of 1924, pages 78-80, which expressly provides that after a county has completed tick eradication, as evidenced by complete release from all State and Federal quarantine restrictions, any subsequent reinfestation of the tick-free area shall be eradicated by the State veterinarian without any expense to the county.

Defendants require petitioners and other cattle-owners in said county to bring at their own expense to the dipping-vat their cattle and dip them; and whenever petitioners or other cattle-owners of the county fail to do this at their own expense, defendants claim that, under the provision of section 2084(g) of the Code of Georgia, all expenses incident thereto shall constitute a lien upon the animals quarantined, and that said animals may be sold by them, and from the proceeds of said sale may be taken all expenses of advertising, feed, and expense of dipping and disinfecting said animals. Said acts of said defendants are illegal, in that the act of 1924 provides that all expense of tick eradica-

tion, in the case of reinfestation, shall be borne by the State. If the provisions of the act of 1918, referred to above, are applicable, the act violates paragraph 2 of section 3 of article 1 of the constitution of the State of Georgia, because: (a) It deprives petitioners of their property without due process of law, in that there is no provision in law by which the cattle-owner can protest and have legally decided the rightfulness or correctness of the alleged cost or expenses of quarantine, dipping, etc. (b) Said act violates article 1, section 1, paragraph 3, of the constitution of this State, in that the private property of petitioners is taken or damaged for public purposes without just and adequate compensation being first paid, as under the facts above set forth the expense of dipping, feed, and charges to be borne by petitioners will be greater than the value of the cattle involved, and the effect is to make petitioners unnecessarily lose their entire personal property for public purposes, without any compensation. The acts of the defendants are willful and abusive of their alleged official powers, and constitute an arbitrary, unreasonable, and illegal exercise of discretion. The defendants are insolvent, and their trespasses are repeated and continuing; and petitioners are remediless without the grant of the writ of injunction restraining said illegal acts. They pray that injunction issue, restraining the defendants from seizing, driving, molesting, or dipping cattle in said county. By amendment the plaintiffs make these allegations: No date has been fixed for the approval by the commissioner of agriculture of the beginning of said work, as required by the act of August 17, 1918 (Acts 1918, p. 256). If said act is held to require the dipping of cattle every fourteen days during the months of January, February, and March, it violates paragraph 3 of section 1 of article 1 of the constitution of this State, and paragraph 2 of said section and article, in that the operation of said law in said manner will cause the destruction, without reasonable necessity therefor, of over fifty per cent. of the cattle of petitioners, when in fact the eradication of ticks in said county may be effectively had without the destruction of said cattle, by confining the dipping to the summer months of the year; and it is violative of paragraph 1 of section 3 of said article, for the same reason, plaintiffs' property being destroyed for public purposes without necessity and without compensation.

The defendants demurred upon the grounds: (1) that the petition sets out no cause of action; (2) that petitioners are not entitled to injunction, under their allegations; (3) that the petition sets out no legal reason why the defendants should be enjoined; (4) that the petition does not show that the defendants are abusing the discretion vested in them by law, or proceeding in any manner not authorized by law; (5) that the grant of the injunction prayed would be to disregard and set aside a valid law of the State. The trial judge sustained the demurrer and dismissed the petition. To this judgment the plaintiffs excepted.

The defendants moved to dismiss the bill of exceptions, on the ground that the question therein raised is moot, in that (1) the injunction was dissolved on interlocutory hearing, and said cattle have been continuously dipped since then; (2) the writ of error is brought to enjoin the dipping of cattle in December, January, February, and March, and "the State will take judicial cognizance of the calendar to the effect that the plaintiffs would not be entitled to an injunction in June."

*Travis & Travis,* for plaintiffs.

*S. C. Townsend, George M. Napier, attorney-general,* and *T. R. Gress, assistant attorney-general,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. A motion is made to dismiss the bill of exceptions in this case, on the ground that the petition was brought to enjoin the dipping of cattle during December, 1925, and January, February, and March, 1926, and that as these months have passed the questions for decision raised by the bill of exceptions in this case are now moot. It is true that injunction was sought to enjoin the dipping of cattle of the plaintiffs during the months named, but it was also brought to enjoin the dipping of these cattle during the winter of 1926. For this reason the questions raised for decision are not moot, and the motion to dismiss the bill of exceptions on this ground is denied.

2. By the act of August 16, 1909 (Ga. Laws 1909, pp. 131, 134, 1 Park's Code, § 2079), the work of cattle-tick eradication thereunder, in any county or part of a county, or in any part or whole of the State, was to be taken up whenever the commissioner of agriculture deemed it wise and best, and had issued a notice to that effect. By the act of August 13, 1910 (Acts 1910, p. 125,

1 Park's Code, §§ 2082(a), 2082(b)), the office of State veterinarian, in the Department of Agriculture, was created, and the duties of this officer are declared to be "to investigate and take proper measures for the control and suppression of all contagious and infectious diseases among the domesticated animals within the State, under such rules and regulations as may be promulgated by him and approved by the commissioner of agriculture of Georgia." It is further declared that "he shall assume charge of the work of cattle-tick eradication in co-operation with the Federal authorities." By the act of August 17, 1918 (Acts 1918, p. 256, 8 Park's Code, § 2084(e)), it was provided that the systematic work of tick-eradication, in all counties in which said work had not been completed, should be begun on April 1, 1919, or, if not then begun, on "such subsequent date as may be fixed by the State veterinarian, with the approval of the commissioner of agriculture." Under the above laws, the eradication of tick from cattle in Bryan County was completed, and the county was released from State and Federal quarantine restrictions in the year 1923. The entire State was likewise released in 1924. By section 2 of the act of August 18, 1924 (Acts 1924, p. 78, 12 Park's Code, § 2082 (1)), it is provided that "After a county has completed tick-eradication, as evidenced by complete release of all State and Federal quarantine restrictions, any subsequent reinfestation of the tick-free area shall be eradicated by the State veterinarian at the expense of the State and without expense to the county, as at present provided in section 3 of the act approved August 18, 1918, commonly known as the Statewide tick-eradication act." It is insisted by counsel for the plaintiffs that under this section, after a county has completed tick eradication, as evidenced by a complete release of all State and Federal quarantine restrictions, any subsequent reinfestation can not be eradicated by the State veterinarian until the commissioner of agriculture has determined that such eradication is wise and best, and has issued notice to that effect under section 7 of the act of 1909, above referred to. We do not think that this contention is sound. The above provision of the act of 1909 applied only to the initial eradication of tick in infested counties, under the laws in force prior to the passage of the act of 1924. The act of 1924 applies to the eradication of tick whenever a tick-free area becomes sub-

sequently reinfested with these pests. Section 2 of said act provides that "any subsequent reinfestation of the tick-free area shall be eradicated by the State veterinarian." By this law it is made the mandatory duty of this officer to act in this matter. His duty in the premises is not made dependent upon any action taken by the commissioner of agriculture. The previous approval of the latter officer is not necessary in order to authorize the State veterinarian to act. No decision of the commissioner of agriculture that such action is deemed wise and best is necessary before the State veterinarian can act. The giving of notice by the commissioner of agriculture that said eradication has been determined upon is not a condition precedent in order to authorize the State veterinarian to act. It follows that the petition was not demurrable upon the ground that it failed to allege that the commissioner of agriculture had determined that the eradication of tick from cattle in this county, after it had become reinfested, was wise and best, and had given notice to this effect.

3. Plaintiffs attack the constitutionality of section 4 of the act of August 17, 1918, on the ground that it denies to them due process of law. This section provides that where the owner of cattle, horses, or mules infected with cattle-ticks, or exposed to tick infestation, fails or refuses, after thirty days written notice from the local or State inspector, to dip such animals in the manner provided therein, such animals "shall be placed in quarantine and dipped and cared for at the expense of the owner by the local inspector." This section further provides that "Any expense incurred in the enforcement of this provision shall be constituted a lien upon any animals so quarantined; and should the owner fail or refuse to pay said expense after three days notice, the animals shall be disposed of as provided by section 2034 of the Civil Code of Georgia, so far as said section refers to advertising and other proceedings to sell." Plaintiffs assert that this section of said act, when construed in connection with the above section of the Code, does not give to them any remedy for contesting the amount of expense claimed by the local inspector for quarantining and dipping such animals, and thus that they will be deprived of their property without due process of law. We do not think that this contention is well founded. Section 4 of the act of August 17, 1918, and section 2034 of the Civil Code,

when construed together, furnish the owner of animals impounded under that section an adequate remedy for contesting the amount of expense claimed by the local inspector for quarantining and dipping such animals. It will be noted that any expense incurred in enforcing this section of the act of 1918 is made a lien upon any animals quarantined thereunder. This section further provides that "should the owner fail or refuse to pay said expense after three days notice, the animals shall be disposed of as provided by section 2034 of the Civil Code of Georgia, so far as said section refers to advertising and other proceedings to sell." Section 2034 of the Civil Code deals with the remedy of the impounder of animals running at large in no-fence territory, and of the remedy of the owner of stock impounded. Under this section, when the impounder and owner of the animals impounded can not agree upon the amount of damages done by such animals, the impounder must institute a proceeding before the justice of the peace of the district, and if there is no such justice in the district, then before the most convenient justice, to have adjudicated the amount of damages to which the impounder is entitled. Under said section the owner of the animals has a right to replevy the same by giving the bond therein provided. We think it was the intention of the legislature to make this remedy applicable to an inspector who impounds cattle under section 4 of the act of 1918. So, if such inspector and the cattle-owner can not agree upon the amount of expense incurred by the inspector in having the animals of the defaulting owner quarantined and dipped, then the inspector must resort to the remedy provided in this section of the Code for the recovery of such expense. He can not advertise and sell them without such proceeding. If the cattle-owner wishes to replevy his animals so impounded, and thus lessen the expense of keeping them thereafter impounded, he can give the bond provided for in said section of the Code. That part of section 4 of the act of 1918, which provides that "should the owner fail or refuse to pay said expense after three days notice," does not authorize the inspector to sell the animals after advertising them for three days. The purpose of this notice is to give to the owner an opportunity to pay this expense, and thus avoid the further expense of litigation provided in the above section of the

Code. If, after the expiration of such three days notice, the owner does not pay this expense, then the inspector must proceed as provided in this section of the Code. Thus, in our opinion, the owner of animals impounded under this section of the act of 1918 is fully protected, and his animals can not be disposed of by the inspector until the amount of the expense has been adjudicated in the manner above indicated. So the attack of the plaintiffs upon this section of the act of 1918, on the ground that it deprives them of due process of law, is without merit.

4. The plaintiffs insist that the defendants are enforcing the provisions of section 4 of the act of 1918 in an arbitrary and unreasonable manner, and that for this reason they should be enjoined from impounding and dipping their cattle in the manner in which they are so seizing and dipping them, and from continuing to so seize and dip them as they threaten to do. They insist that this administration by the defendants of said section is unconstitutional, in that it violates the due-process clause of our State constitution. The allegations of the petition upon this subject are as follows: During the time when said county was under original quarantine for fever-ticks, and the cattle therein were in process of being dipped under authority of the State veterinarian, he and his employees stated that it was unwise to dip cattle during the winter months of December, January, February, and March, for the reasons (a) that cattle which run at large during said months seek cover in the deepest parts of the swamps, which constitute a great part of the territory of said county, and for this reason all of the cattle therein could not be procured to be dipped; (b) because cattle become more or less weak and emaciated during the winter months, and the dipping of them produces a very high percentage of mortality; (c) because during the latter part of the winter such cattle become so weak that when put in the vat they have not strength enough to get out; and (d) because during the winter months fever-ticks are more or less dormant, and their eradication can not be completed without the necessity of destroying a large percentage of the cattle dipped. The dipping done and proposed to be continued by the defendants is being had in part at the expense of the county, the defendants insisting that the county shall maintain and repair vats and provide the cattle-dip required; and they threaten that if the county

shall discontinue at any time to do these things, they will maintain only one dipping-point in the county, without regard to the prohibitive expense to which each of plaintiffs and other cattle-owners in the county would thereby be put, requiring them to drive their cattle for great distances to the dipping-point. Such expense would be greater than the value of the cattle involved. Said acts of the defendants violate the provisions of section 2 of the act of August 18, 1924 (Acts 1924, p. 78), which expressly provides that after a county has completed tick eradication, as evidenced by complete release from all State and Federal quarantine restrictions, any subsequent reinfestation of the tick-free area shall be eradicated by the State veterinarian at the expense of the State and without expense to the county. Defendants require plaintiffs and other cattle-owners to bring their cattle at their own expense to the dipping-vat, and dip them; and whenever plaintiffs or other cattle-owners fail to do this at their own expense, defendants claim that, under the provisions of section 2084(g) of 12 Park's Code Supp. 1926, all expenses incident thereto shall constitute a lien upon the animals quarantined, and that such animals may be sold by them, and from the proceeds of such sale may be taken all expenses of advertising, feed, and expense of quarantine and dipping such animals. Said acts of the defendants are illegal. The said acts of the defendants, who are insolvent, are willful, abusive of their alleged official powers, and constitute an arbitrary, unreasonable, and illegal exercise of discretion.

Do these allegations show an arbitrary and unreasonable administration of the act of 1924? Before answering this question, we must deal with certain questions of law, the determination of which is necessary to a proper answer. Dipping-vats and chemicals must be furnished at the expense of the State and without expense to the county. *Colquitt County* v. *Bahnsen,* 162 Ga. 340 (133 S. E. 871). But the expense of bringing cattle to the vats and dipping them must still be borne by the cattle-owners, under the act of 1924. So the requirement of the defendants that the plaintiffs shall bear this expense is not arbitrary and unreasonable. The allegation of the petition as to the statements of the State veterinarian and his employees, when dipping cattle in this county under the act of 1918, as to the unwisdom of dipping cattle

during the months of December, January, February, and March, must be taken most strongly against the pleader, and does not amount to an affirmation that the dipping of cattle during these months is unwise for the reasons given. This allegation merely asserts a past opinion of these officials and the reasons given therefor, without alleging that the same was sound at the time plaintiffs filed their petition, and that such opinion was sound for the reasons given by these officials for their previously expressed opinion. It was incumbent upon the plaintiffs to distinctly allege that it was unwise to dip cattle in the winter months, and assign their reasons for that opinion upon this subject. These statements can not be treated as admissions which will bind the public, as the officers making them did not do so in the exercise of any power conferred on them by law. Civil Code (1910), § 303.

This leaves for our consideration but one other allegation made by the plaintiffs in support of their position that the administration of the act of 1924, by the defendants, is arbitrary and unreasonable; and that is the assertion that the State veterinarian and the defendants threaten to maintain but one dipping-point in the county, if the county should discontinue paying a part of the expense of providing vats and chemicals for this work, which would render the expense of taking their cattle to such point prohibitive, in that such expense would exceed the value of their cattle. Conceding that such administration of the act of 1924 would be arbitrary and unreasonable, the question then arises whether the plaintiffs would be entitled to injunctive relief against such administration of this act. The plaintiffs, in the event they failed or refused to take their cattle to the dipping-point, and the same were taken there by the defendants, would only be liable for the necessary and reasonable expense which should have been incurred in having their cattle dipped. If the defendants acted arbitrarily and unreasonably in fixing but one dipping-vat in the county, and this resulted in unnecessary and unreasonable expense in the dipping of their cattle, then the plaintiffs would not be liable for so much of such expense as would not have accrued but for the arbitrary and unreasonable conduct of the defendants in establishing but one dipping-point in the county. The plaintiffs could avail themselves of this defense when sued by the local inspector therefor. They thus have an adequate and complete remedy

at law, by which they can contest the reasonableness of the expense of having their cattle dipped; and for this reason they did not make a case for the extraordinary remedy of injunction.

5. Applying the above principles, the court did not err in sustaining the demurrer to the petition of the plaintiffs.

*Judgment affirmed. All the Justices concur.*