A00A1970. FRIEDRICH et al. v. FIDELITY NATIONAL BANK.
(545 SE2d 107)

SMITH, Presiding Judge.

This appeal raises a question of first impression in this State concerning the method of awarding attorney fees following the settlement of a class action lawsuit. We find persuasive *Camden I Condo. Assn. v. Dunkle*, 946 F2d 768 (11th Cir. 1991). That decision describes three methods of determining attorney fees in the type of settlement here and concludes that the "percentage of the fund" method is the most appropriate. Because the trial court's order does not demonstrate that the court complied with the manner of determining fees prescribed by *Camden I*, we vacate the award and remand this case for proceedings consistent with this opinion.

The fee award at issue arises out of a class action lawsuit concerning a failed securities offering of the Automobile Insurance Premiums Trust. The trust was formed to provide loans to licensed premium finance companies, which then provided financing to firms and individuals desiring to finance the cost of their property and casualty insurance premiums. Among other things, the complaint alleged that Fidelity National Bank (FNB), as a trustee under a declaration of trust, breached the trust agreement.

Class counsel and FNB negotiated a settlement in which FNB agreed to pay the principal sum of $500,000 to the class. After the trial court gave final approval to the settlement, the court ruled on class counsel's application for an award of attorney fees. In the application, counsel sought fees in the amount of $125,169.86, which represented 25 percent of the settlement amount plus accrued interest. The trial court awarded attorney fees in the amount of $81,982.34. The trial court's order recites that the court

reviewed the time and labor required, the novelty and difficulty of the questions involved, the skill necessary to perform the legal services properly, the probability of preclusion of other employment, the customary fee, time limitations, the amount in controversy, awards in similar cases, the time required to reach a settlement, the lack of objections by any class members and the results obtained.

The order also recites that counsel had submitted records showing the number of billable hours spent on the litigation, the rates charged, and an itemization of time and work expended in the action totaling $92,198. The trial court stated that it deducted $7,278 in "billings that seemed tangentially connected to this case or excessive in other ways." Through the plaintiffs in this action, class counsel appeals,[1] contending that the trial court used an improper standard of awarding fees.

The method of awarding attorney fees in a case involving the type of settlement involved here has not been squarely addressed by the courts of this State. The Eleventh Circuit, however, discussed the issue in *Camden I*, a well-reasoned and highly instructive opinion concerning various methods of awarding fees in a class action lawsuit. We turn to that case for guidance.

In *Camden I*, the court discussed the well-established principle, known as the "American Rule," that in general, all parties bear their own litigation costs. Id. at 770-771. A recognized exception to this rule, however, concerns the award of attorney fees from a "common fund," a concept based on the principle that those who benefit from a lawsuit without contributing to the costs involved "are unjustly enriched at the successful litigant's expense." (Citation and punctuation omitted.) Id. at 771. The common fund exception to the American Rule has been recognized in Georgia. See *State of Ga. v. Private Truck Council*, 258 Ga. 531, 534-535 (5) (371 SE2d 378) (1988). Despite the agreement among jurisdictions that an award from a common fund is desirable in this type of case, however, the method of determining the amount of the award has varied among jurisdictions. These methods are extensively discussed in *Camden I*.

The court in *Camden I* first noted that, historically, fee awards in common fund cases were computed under a "percentage of the fund" analysis, with the amount being left in the discretion of the trial court after considering the reasonableness of the award under the circumstances of any particular case. Id. at 771. The court stated that "every Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis. [Cits.]" Id. at 773.

But as further discussed in *Camden I*, in 1973, another set of guidelines was prescribed by the Third Circuit, designed to provide

---

[1] In a one-page brief, FNB states that as a part of the settlement, it agreed that it would not object to counsel's request for attorney fees. The brief further recites that consistent with this agreement, FNB did not object to the application for an award of attorney fees in the trial court and that it "does not object to the fees that are the subject of the instant appeal." Finally, the brief recites that FNB "makes no response to the matters addressed in Appellant's brief beyond what has been stated here."

more easily reviewable findings and to ensure compensation to attorneys "for the reasonable value their time would normally command in the marketplace." Id. at 772. Under this approach, now known as the "lodestar" method of computing fees, a trial court must multiply the number of hours reasonably spent by trial counsel by a reasonable hourly rate. This figure can then "be adjusted upward or downward for certain factors known as multipliers, such as contingency and the quality of the work performed, to arrive at a final fee." Id. A short time after the lodestar method was established, the Fifth Circuit in *Johnson v. Ga. Hwy. Express*, 488 F2d 714 (5th Cir. 1974) adopted a 12-factor method of determining attorney fees. *Camden I*, supra at 772.[2] The court in *Camden I* noted that under both the lodestar and 12-factor methods, the "most heavily weighted" criteria are the "time and labor required." (Citation and punctuation omitted.) Id. at 772.

After detailing these methods of computing fee awards, the *Camden I* court discussed the criticism by commentators and lawmakers of both the lodestar and 12-factor approaches, particularly the emphasis placed by these methods on the number of hours expended by counsel. Id. at 773 (3). Much of this discussion was based on a report prepared by a task force commissioned by the Third Circuit to study problems related to the award of attorney fees and to develop recommendations that would accomplish several goals. Among other things, these goals were developed "to encourage early settlement or determination of cases; to provide predictability . . . and to arrive at fee awards that are fair and equitable to the parties and that take into account the economic realities of the practice of law." (Citation omitted.) Id. at 773.[3] Concluding that neither the lodestar method nor the 12-factor method "achieve[d] any of these stated goals in common fund cases in which the measure of the recovery is the best determinant of the reasonableness and quality of the time expended," id., the task force recommended that the percentage of the fund method be used to award fees in all common fund cases. Id. After reviewing the task force report, along with United States Supreme Court cases and cases from other jurisdictions, the *Camden* court found the percentage of the fund approach to be "the better reasoned in a common fund case." Id. at 774.

Although some other jurisdictions have given trial courts discretion to apply either a lodestar or percentage of the fund analysis in common fund cases,[4] we find persuasive the criticisms of the lodestar

---

[2] These 12 factors are set out in *Camden I*, supra at 772, fn. 3.

[3] For a complete recitation of the goals the task force was commissioned to study, see *Camden I*, supra at 773.

[4] See, e.g., *Johnston v. Comerica Mtg. Corp.*, 83 F3d 241, 246 (8th Cir. 1996); *Brundidge*

method discussed in *Camden I* as well as other cases such as *Swedish Hosp. Corp. v. Shalala*, 1 F3d 1261 (D.C. Cir. 1993). As stated in *Swedish Hosp.*, the lodestar method "encourages significant elements of inefficiency," id. at 1268, giving incentive to attorneys "to spend as many hours as possible, billable to a firm's most expensive attorneys." Id. That court also noted that the lodestar approach afforded "a strong incentive against early settlement since attorneys will earn more the longer a litigation lasts. [Cits.]" Id. at 1268-1269. We also note that court's comment that

> a percentage-of-the-fund method is less demanding of scarce judicial resources than the lodestar method. The lodestar method makes considerable demands upon judicial resources since it can be exceptionally difficult for a court to review attorney billing information over the life of a complex litigation and make a determination about whether the time devoted to the litigation was necessary or reasonable.

Id. at 1269-1270.

After reviewing this comparison of the lodestar and percentage of the fund method, as well as the criticisms of the lodestar method by the courts of other jurisdictions, we find the percentage of the fund approach to be the most equitable, sensible, and fair. We therefore hold that when assessing attorney fees in a common fund case, a percentage of the fund analysis is the preferred method of determining these fees, unless unusual circumstances would make its use unfair or impractical. To facilitate appellate review of the reasonableness of fees, as discussed in *Camden I*, we also conclude that when awarding attorney fees in this type of case, a trial court must "articulate specific reasons for selecting the percentage upon which the . . . award is based." Id. at 775. The trial court's order must identify all factors on which the court relied and explain how each factor affected the selection of the percentage awarded as attorney fees. Id. While these factors may vary from case to case, *Camden I* identifies several that should be considered:

> [T]he *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases. Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settle-

ment, and the economics involved in prosecuting a class action. In most instances, there will also be additional factors unique to a particular case which will be relevant to the [trial] court's consideration.

Id.

It appears in this case the trial court may have considered some of the 12 *Johnson* factors. The order falls short, however, of the requirements set forth in *Camden I*. The order does not state a specific percentage of the fund awarded as attorney fees. And although the order does identify the factors on which the trial court relied, it does not explain how each of these factors impacted the court's decision. Furthermore, given the discussion in the order concerning class counsel's billable hours and hourly rate, it appears that the trial court may have placed undue weight on the time spent by counsel, in contravention of the principles underlying the percentage of the fund approach, as discussed in *Camden I*. We therefore vacate the award and remand this case to the trial court for proceedings consistent with this opinion. In particular, we direct the trial court to enter an award complying with the requirements for awarding attorney fees in a common fund case, as set out in *Camden I*.

*Judgment vacated and remanded. Johnson, P. J., and Phipps, J., concur.*

DECIDED JANUARY 29, 2001.

*Vaughan & Murphy, Charles C. Murphy, Jr., Patricia A. Chandler*, for appellants.
*Stites & Harbison, James T. White*, for appellee.