A05A0873, A05A0874. BARNES et al. v. CITY OF ATLANTA;
and vice versa.
(620 SE2d 846)

JOHNSON, Presiding Judge.

The plaintiffs in a class action suit against the City of Atlanta (the "City") appeal from the orders of the trial court on their motions for attorney fees, partial money judgment, and amendment of class certification. The City has filed a cross appeal. We affirm for the reasons set forth below.

In 1999, a group of attorneys who practiced law in the City, including plaintiff Gary Barnes, demanded the City refund their payment of the City's occupational tax during the reporting periods 1998, 1997, and 1996. After more than a year passed from the date of their refund claim without payment by the City, Barnes and other named plaintiffs brought a class action complaint against the City on behalf of attorneys who had paid the City's occupational tax. The plaintiffs contended, among other things, that the City's occupational tax was an unconstitutional encroachment on the Supreme Court's authority to regulate the practice of law.

*Order on Class Certification.* The trial court divided the plaintiffs into two classes: those who had not requested a tax refund from the City pursuant to OCGA § 48-5-380 (Class I) and those who had requested a tax refund from the City pursuant to OCGA § 48-5-380 (Class II). The trial court granted class certification to Class I and Class II with respect to the plaintiffs' constitutionality claim, and granted class certification to Class II with respect to the plaintiffs' refund claim. However, the trial court denied class certification to

Class I as to the plaintiffs' refund claim because the members of Class I were required to make a pre-litigation demand for a refund before pursuing the claim in superior court.

*Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Motion for Summary Judgment.* On March 1, 2002, the trial court granted plaintiffs' motion for summary judgment and denied the City's motion for summary judgment in an order finding that the City's occupational tax as applied to attorneys was an unconstitutional precondition on the practice of law. This order was affirmed on appeal by our Supreme Court in *City of Atlanta v. Barnes.*[1]

*Order on Plaintiffs' Motion for Entry of Partial Money Judgment.* On remittitur, the trial court entered its September 17, 2003 order on plaintiffs' motion for entry of partial money judgment. In their motion, the plaintiffs argued that they had made a refund request on behalf of the Class I plaintiffs by filing the original class complaint, that the requisite waiting period had expired, and that the Class I plaintiffs had been converted into Class II plaintiffs who could now seek refunds. The trial court disagreed, inviting plaintiffs' counsel to file a motion to amend the purposes for which Class I was certified, but reiterating its earlier finding that the Class I plaintiffs must still exhaust their administrative remedies before maintaining a tax refund action, as required by OCGA § 48-5-380.

*Order on Plaintiffs' Motion for Attorney Fees.* On September 17, 2003, the trial court also entered its order on plaintiffs' motion for attorney fees. The trial court awarded plaintiffs' counsel attorney fees of 33 1/3 percent of the common fund, but provided that those who had opted out of the classes were not responsible for paying attorney fees.

*Order on Plaintiffs' Motion to Alter and Amend Class Certification Order.* On February 27, 2004, the trial court issued its order on plaintiffs' motion to amend the previous class certification order. The trial court amended the Class I certification to permit class counsel to request occupational tax refunds on behalf of the members of Class I, noting that the court had previously ruled that any refund request made by counsel without such approval was unauthorized.

*Final Order.* On September 22, 2004, the trial court designated its February 27, 2004 order on plaintiffs' motion to amend the class certification order as a final order. The trial court also held that refund requests made by plaintiffs' counsel on behalf of Class I had been made before counsel was authorized to do so, and that the statute of limitation "did not begin to run" until February 27, 2004.

---

[1] 276 Ga. 449 (578 SE2d 110) (2003).

Plaintiffs appeal from (i) the trial court's September 17, 2003 orders on plaintiffs' motions for entry of partial money judgment and attorney fees and (ii) the trial court's February 27, 2004 order on plaintiffs' motion to amend class certification, as clarified in the September 22, 2004 order. The City appeals from the trial court's February 27, 2004 order on plaintiffs' motion to amend class certification, as clarified in the September 22, 2004 order.

*Case No. A05A0873*

1. The plaintiffs contend the trial court erred by finding that (i) plaintiffs' counsel did not have the authority to demand a tax refund on behalf of all Class I members, (ii) the statute of limitation for Class I refund claims began to run on February 27, 2004, and was not tolled upon the filing of the class complaint, and (iii) those who opt out of the class action will not be responsible for attorney fees and expenses of litigation.

(a) *OCGA § 48-5-380 applied to Class I's refund claim.* A common thread running through the plaintiffs' arguments is that the pre-litigation claim for a refund contemplated by OCGA § 48-5-380 is not applicable to the claims of the Class I taxpayers, and so we will address this contention separately. OCGA § 48-5-380 establishes a procedure for a taxpayer to seek a refund of an erroneous or illegal collection of any tax or license fee by a county or municipality.[2] Under the statutory scheme, the taxpayer must make a pre-litigation refund claim to the taxing authority.[3] Thereafter, "[n]o action or proceeding for the recovery of a refund shall be commenced before the expiration of one year from the date of filing the claim for refund unless the governing authority of the county or municipality renders a decision on the claim within the one-year period."[4]

By definition, members of Class I had not made a pre-litigation claim for a refund of the City's occupation tax, and the trial court denied class certification to Class I on their refund claims for that reason. The trial court did not consider a refund action against the City by the Class I plaintiffs to be available under OCGA § 48-5-380 until February 27, 2004, the date of its order on plaintiffs' motion to amend the class certification order. The plaintiffs contend the trial court erred in so ruling because OCGA § 48-5-380 was not applicable

---

[2] See *Atlanta Hospitality Workers v. City of Atlanta*, 247 Ga. App. 650, 652 (2) (545 SE2d 49) (2001).

[3] OCGA § 48-5-380 (b).

[4] OCGA § 48-5-380 (c).

to their claims, which they further contend had been properly asserted by both classes on the date of filing of the original class complaint. We disagree.

The plaintiffs characterize their initial complaint as a common law action for money had and received, and contend they had no need to rely on OCGA § 48-5-380 to sue for a refund. We have previously noted that the right to sue for refund was available under common law.[5] But it does not follow that the plaintiffs could simply bypass OCGA § 48-5-380's requirement that the taxpayer demand a refund before proceeding to superior court by characterizing their action as one brought under authority of common law. "The statutory authorization to bring an action for a tax refund in superior court against a governmental body is an express waiver of sovereign immunity, and the State's consent to be sued must be strictly construed."[6] Furthermore, in *Barnes* our Supreme Court characterized this action as brought under OCGA § 48-5-380.[7] Inasmuch as OCGA § 48-5-380 applies to "any" tax levied by a municipal governing authority, including an "illegal collection," the statute governs the Class I refund claims, and the trial court was correct in applying the statutory requirement that members of Class I make a pre-litigation claim for a refund before bringing suit.

Relying on *Barnes*, the plaintiffs further contend that OCGA § 48-5-380 was inapplicable because their claim was brought as a class action. We disagree. At issue in Division 3 of *Barnes* was the City's claim that the trial court erred in certifying as a class action the refund claim of the Class II plaintiffs.[8] The City relied on *Henderson v. Carter*,[9] in which our Supreme Court, in reviewing a statute similar to OCGA § 48-5-380 (c), had previously held that a class action was not authorized in a tax refund case. Our Supreme Court overruled *Henderson*, reasoning as follows:

> When a statute provides the right to bring an action for a tax refund against a governmental body, that statute provides an express waiver of immunity and establishes the extent of the waiver (the amount of the refund), but does not purport to provide for the form of action to be utilized. By participating as a plaintiff in a class action that includes a claim for a tax refund, a taxpayer is unquestionably bringing an action

[5] See *Hawes v. Smith*, 120 Ga. App. 158 (169 SE2d 823) (1969).

[6] (Citation omitted.) *Sawnee Electrical Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005).

[7] 276 Ga. at 451 (3).

[8] Id.

[9] 229 Ga. 876 (2) (195 SE2d 4) (1972).

for a refund, which is what the statute permits. We conclude, therefore, that the holding in *Henderson* that there can be no class actions brought for tax refunds was error. . . .[10]

The plaintiffs focus on the Court's statement that the statute does not provide for the "form of action to be utilized," and that a plaintiff in a class action that includes a claim for a tax refund is "unquestionably bringing an action for a refund, which is what the statute permits." They contend that the original class action complaint was therefore a permissible form of action on behalf of both classes. But at issue in *Barnes* was the trial court's certification of the refund claims of the Class II plaintiffs, who had made pre-litigation claims for a tax refund pursuant to OCGA § 48-5-380. Accordingly, while a class action could supplement OCGA § 48-5-380 with respect to the claims of Class II, the plaintiffs cannot look to *Barnes* as authority for employing a class action to circumvent the statutory requirements which had yet to be satisfied by members of Class I.

(b) *Plaintiffs' counsel did not have authority to demand refunds on behalf of Class I under the initial class certification.* The trial court found that plaintiffs' attorneys had no authority to file a pre-litigation refund claim on behalf of the members of Class I without authority from the trial court or an amendment to the class certification order allowing class counsel to represent the class for other than the constitutional issue. Plaintiffs contend that, because it was a technical and tactical legal decision, class counsel did not require specific authority from their clients or the trial court to make a pre-litigation refund claim. We disagree.

The trial court certified the class action in its discretion and bifurcated the classes based on the commonality of rights, as it was authorized to do, and plaintiffs did not seek an appeal of the class certification order.[11] Class counsel represented the classes under the terms of that order, which denied class certification to Class I as to the refund claim but certified Class I as to plaintiffs' constitutionality claims. On March 12, 2002, class counsel nevertheless filed a pre-litigation claim with the City, on behalf of Class I, for a refund of the occupation tax.

---

[10] *Barnes*, supra, 276 Ga. at 452 (3). *Barnes* has in turn been legislatively superseded insofar as, effective for tax years beginning on or after January 1, 2003, claims for refunds under OCGA § 48-2-35 may not be pursued through a class action. See OCGA § 48-2-35 (b) (5); *Sawnee Electrical Membership Corp.*, supra, 279 Ga. at 25 (3), n. 1.

[11] See *State Farm &c. Ins. Co. v. Mabry*, 274 Ga. 498, 499 (1) (556 SE2d 114) (2001) (the trial court may bifurcate classes based on commonality of rights and issues); *Ford Motor Credit v. London*, 175 Ga. App. 33, 35 (332 SE2d 345) (1985) ("[w]hether to allow a case to proceed as a class action in Georgia is a matter of discretion with the trial judge").

Even if we assume that a pre-litigation claim for a tax refund may be made on behalf of a class of taxpayers,[12] we conclude that class counsel had no authority to make this claim.[13] Plaintiffs do not show that the March 12, 2002 refund claim furthered the constitutional issue which was the objective of the class action for which Class I was certified. Nor do plaintiffs show class counsel notified the members of Class I that class counsel intended to pursue a refund claim on their behalf. While plaintiffs argue that class counsel's claim on behalf of their Class I clients was analogous to a claim made by a lawyer on behalf of an individual taxpayer in the exercise of the lawyer's legal judgment, the individual taxpayer would have set the objectives of representation to include a tax refund. Unlike the hypothetical individual taxpayer, or the members of Class II, members of Class I had never indicated they wished to pursue a tax refund, and OCGA § 48-5-380 (b) requires that the pre-litigation refund claim be made by "the taxpayer from whom the tax or license fee was collected."

Furthermore, rather than asking for an amendment to the class certification order,[14] class counsel acted alone in making the refund demand, without notification to the trial court or their clients, and by doing so failed to provide the members of Class I with the protection provided by court supervision or the notice to which members of the class were entitled.[15] In contrast, when class counsel belatedly asked the trial court to amend the class certification order to authorize counsel to make a refund request on behalf of Class I, the trial court required the plaintiffs to give notice by certified mail and by publication to all members of Class I, informing the class members of the purposes of the litigation and providing them with an opportunity to either ratify or opt out of the refund request made on their behalf. We

---

[12] The City argued below that the Class I taxpayers must make their pre-litigation refund claims individually. On appeal, however, the City does not contend that the trial court erred in amending the class certification order to allow class counsel to demand a refund on behalf of Class I. Accordingly, the issue of whether a pre-litigation claim for a tax refund under OCGA § 48-5-380 (b) could be made on behalf of a class of taxpayers is not before us.

[13] See generally *Addley v. Beizer*, 205 Ga. App. 714, 719 (1) (423 SE2d 398) (1992) (an attorney is not a general agent for all purposes, but his authority is limited to the particular purpose for which he was retained).

[14] Plaintiffs eventually moved for and were granted an amendment to the class certification order on February 27, 2004. The amendment of a class certification order is allowed under federal law before final judgment, see *Prado-Steiman v. Bush*, 221 F3d 1266, 1273 (11th Cir. 2000), and Georgia courts have generally relied on federal law in interpreting Georgia's class action statute. See *State Farm*, supra.

[15] See *Smith v. AirTouch Cellular of Ga.*, 244 Ga. App. 71, 73 (2) (534 SE2d 832) (2000) (to satisfy procedural due process for absent class members there must be (1) notice and reasonable opportunity to be heard; (2) opportunity to opt out of the proceeding; and (3) adequate class representation); *Hill v. Gen. Finance Corp. of Ga.*, 144 Ga. App. 434, 436 (241 SE2d 282) (1977) (the entity seeking to represent the alleged class must mail an initial notice of the alleged class action to each member of such class).

hold that, since class counsel's March 12, 2002 refund claim was made without authority, it was not sufficient to establish a pre-litigation refund claim by the taxpayer for purposes of OCGA § 48-5-380 (b).

(c) *The availability of Class I refunds is determined from the date of demand, which the trial court set as of February 27, 2004.* The plaintiffs contend that the availability of refunds for Class I should be determined as of the date of the filing of the original class complaint and not February 27, 2004. We disagree.

Under OCGA § 48-5-380 (b), a taxpayer may make a pre-litigation demand for a refund at any time within three years of the date the tax is paid.[16] In its order on plaintiffs' motion for entry of partial money judgment, the trial court held that Class II plaintiffs could recover taxes from three years of the date of demand, but found the question of which tax years the Class I plaintiffs could recover was irrelevant because Class I plaintiffs had made no demand. The plaintiffs contend the Class I plaintiffs' entitlement to a tax refund should be determined on the date the class action was filed, June 26, 2000, because the statute of limitation was tolled as to all class members with the filing of the suit.

As a general rule, the statute of limitation in a class action is tolled for all asserted members of the class during the pendency of action.[17] But when the class action was filed the members of Class I had failed to make the pre-litigation demand under OCGA § 48-5-380 which was a prerequisite to a refund suit in the superior court, and the filing of the class action could not toll a cause of action which had yet to accrue.[18]

2. The plaintiffs contend the trial court erred in finding that the taxpayers who "opted out" of their class would not be responsible for paying attorney fees to plaintiffs' counsel. We disagree.

*Class Notices.* Pursuant to a notice approved by the trial court on May 12, 2003, notification was given by publication during June 2003 to "[a]ll members of the State Bar of Georgia having offices in the City of Atlanta who paid Atlanta Occupation Tax between 1996 and date." The publication notified the attorneys that (i) a class action had been brought against the City of Atlanta, (ii) the court had certified the plaintiffs' classes, (iii) summary judgment had been entered against

---

[16] See *Webb v. Coweta County*, 178 Ga. App. 170, 170-171 (2) (342 SE2d 345) (1986).

[17] *Crown, Cork &c. Co. v. Parker*, 462 U. S. 345, 353-354 (103 SC 2392, 76 LE2d 628) (1983).

[18] See, e.g., *State v. Private Truck Council &c.*, 258 Ga. 531, 533-534 (2) (371 SE2d 378) (1988) (class action seeking declaratory judgment that certain trucking fees were unconstitutional did not toll statute of limitation under OCGA § 48-2-35 "such that plaintiffs may revive unasserted claims for refunds which might have existed prior to the filing of the complaint").

the City, and the order granting summary judgment had been affirmed by the Supreme Court of Georgia, (iv) determination had yet to be made by the court as to the members of the classes, (v) members of the "refund class" who do not opt out will receive occupational tax refunds, less fees and expenses, (vi) persons who wish to be excluded from receiving refunds must express their intention to be excluded from the class, but that persons who opt out of the class would nevertheless be charged expenses and attorney fees against any tax refund to which they would be entitled, since they had been members of the class during the litigation.[19]

Pursuant to its February 27, 2004 order on plaintiffs' motion to amend class certification order, the trial court ordered notice to be given to members of Class I by publication and by certified mail. The notification's purpose was to inform the class members of the recertification of the class, and to give class members an opportunity to opt out of the class. The trial court provided that class members who opted out would not be responsible for attorney fees.

*Attorney Fees Awarded to Plaintiffs' Counsel.* In accordance with the procedure approved in *Friedrich v. Fidelity Nat. Bank*,[20] the trial court awarded plaintiffs' counsel attorney fees of 33 1/3 percent of the common fund.[21] The award of attorney fees from a "common fund" is "based on the principle that those who benefit from a lawsuit without contributing to the costs involved are unjustly enriched at the successful litigant's expense."[22] We review an award of attorney fees in a class action for an abuse of discretion, although we may closely scrutinize questions of law decided by the trial court in reaching the fee award.[23]

Although the published notice provided that those persons who "opted out" would be charged attorney fees against their refunds, the trial court later reversed its position, holding that persons who chose

---

[19] The City raised the issue of whether notice by publication rather than by mail was sufficient to satisfy the requirements of due process in light of *Mullane v. Central Hanover Bank & Trust Co.*, 339 U. S. 306 (70 SC 652, 94 LE 865) (1950). The trial court considered the City's argument and denied its objections. This order was not appealed by the City and the issue is not before us.

[20] 247 Ga. App. 704, 705 (545 SE2d 107) (2001).

[21] In accordance with a separate settlement agreement between plaintiffs' counsel and a member of Class II, plaintiffs' counsel agreed to seek only 15 percent of the common fund attributable to attorneys who filed their own refund claim before the filing of the class complaint. The trial court acknowledged that the attorneys who applied for their own refunds before the class action was filed encompassed "probably the entirety" of Class II.

[22] (Citation and punctuation omitted.) *Friedrich*, supra, 247 Ga. App. at 705 (1).

[23] See *Camden I Condo. Assn. v. Dunkle*, 946 F2d 768, 771 (II) (11th Cir. 1991). We adopted the procedures set forth in *Camden I* for reviewing an award of attorney fees in a class action. *Friedrich*, supra, 247 Ga. App. at 707-708.

to be excluded from the class action were not responsible for paying attorney fees to plaintiffs' counsel. In its order, the trial court took

> judicial notice of the fact that this notice was the first opportunity for any class member to opt out of this lawsuit, and that no notice was published prior to this point. Thus, while it is true that the work has already been done with respect to this lawsuit, and that those who opt out will be enriched by that work, Plaintiffs' counsel did not afford any member the opportunity to relieve them of this burden.

Plaintiffs contend the trial court erred in excusing those who opted out of the classes from paying attorney fees because those persons would be unjustly enriched by the plaintiffs' efforts in establishing that they were entitled to a tax refund. The trial court recognized that the attorneys who opted out would benefit from the efforts of plaintiffs' counsel, but determined that such enrichment would not be unjust in view of the time the notification was published. *Those who opted out were not unjustly enriched if they did not pay attorney fees to plaintiffs' counsel.* The trial court's reasoning is consistent with the principle that a party may not be forced to pay for benefits which have been imposed on him or her with no opportunity to refuse. "The fact that he is enriched is not enough, if he cannot avoid the enrichment. On the other hand, if the plaintiff, before bestowing the benefit on the defendant, notifies him and thus gives an opportunity to decline, the defendant, if he accepts the benefit, will be held liable."[24] Although notice was given to members of the classes, it was given three years after the action was filed, approximately a year and a half after the classes were certified, and after entry of summary judgment and an appeal to the Supreme Court. Because of the timing of the notice, the attorneys who opted out of the classes were not afforded an opportunity to either pursue collection of a refund on their own or to assist plaintiffs' counsel in their efforts.

Citing *Sprague v. Ticonic Nat. Bank*,[25] plaintiffs argue that had class members been granted the option to opt out earlier they still would have also been liable for attorney fees and their share of expenses. But *Sprague* does not demand attorney fees be awarded to plaintiffs' counsel here, as the holding in that case reversed the

---

[24] Wade, Restitution for Benefits Conferred Without Request, 19 Vanderbilt Law Review 1183, 1198. See also *Travelers Ins. Co. v. Williams*, 541 SW2d 587, 590 (Tenn. 1976) ("one is not unjustly enriched by a benefit 'forced upon' him as the result of services voluntarily and officiously performed by another who has been expressly informed by the alleged promisor that his services are not desired").

[25] 307 U. S. 161 (59 SC 777, 83 LE 1184) (1939).

circuit court of appeals so that the district court "may entertain the petition for reimbursement [of litigation expenses] in the light of the appropriate equitable considerations," but did not require that attorney fees be paid.[26] As the trial court did consider the payment of attorney fees in light of the appropriate equitable considerations, we conclude it did not abuse its discretion in refusing to force those class members who opted out pursuant to the June 2003 notice to pay attorney fees to plaintiffs' counsel.

We also conclude that the trial court did not abuse its discretion in finding that members of Class I who opt out of the class pursuant to the notice required by the trial court's February 27, 2004 order will not be required to pay attorney fees. Those who opt out pursuant to this notice will not benefit from the recertification of Class I to allow plaintiffs to demand a refund on their behalf. While those who opt out and eventually secure refunds on their own have arguably benefitted from plaintiffs' attorney's efforts on the constitutional issue, these efforts did not result in a common fund from which the opt outs were entitled to recover,[27] nor was the constitutional question litigated while members of Class I had a then existing claim whose validity was established by counsel's efforts.[28] The opt outs from Class I stood in a similar position to anyone who might be later benefitted by an attorney's efforts in overturning an unconstitutional statute, but who would not be expected to pay attorney fees on such account. The trial court was entitled to conclude that the opt outs from Class I would not be unjustly enriched if they did not pay attorney fees to plaintiffs' counsel.

### Case No. A05A0874

3. In its cross-appeal, the City first contends that the trial court erred by failing to specifically state that the date of the Class I refund demand was February 27, 2004, and that refunds would only be available for taxes paid between February 27, 2004 and February 27, 2001. We find no error by the trial court. Although the February 27, 2004 order was arguably unclear as to the date of demand on behalf of the members of Class I, the trial court states in its September 22, 2004 order that "for clarification, the Court expressly states that the

---

[26] 307 U. S. at 170.

[27] Compare *Boeing Co. v. Van Gemert*, 444 U. S. 472 (100 SC 745, 62 LE2d 676) (1980) (absentee class members need prove only their membership in the injured class to claim their logically ascertainable shares of the judgment fund).

[28] Compare *Sprague*, supra (trust funds were secured by certain bonds held by a failed bank, and by establishing her lien against the bonds, the petitioner established the claims of 14 other trusts in situations like her own).

refund requests made by Class Counsel on behalf of Class One were made before Counsel was authorized to do so. . . . Therefore, until the February 27, 2004 order, the statute did not begin to run." The implication of the September 22, 2004 order is that the demand for a refund on behalf of Class I was made on February 27, 2004, the first date plaintiffs' counsel was authorized to make such a demand. OCGA § 48-5-380 provides a claim for refund may be made within three years of the date of the tax, and the trial court was not required to make a specific finding as to which tax payments the refund request on behalf of Class I applied.

The City also takes exception to the trial court's finding that OCGA § 48-5-380's pre-litigation demand requirement did not apply to this action "in the interests of judicial economy," and that the City had waived the requirement. We find this claim moot.

The trial court found that the City had consented in judicio to a procedure whereby the City would not insist on the "refund request prerequisite" to a suit. As the City recognizes in its appellate brief, the taxpayer may sue on his or her refund claim so long as "the governing authority of the county or municipality renders a decision on the claim within the one-year period [from the date of demand]."[29] The City asks that the case be remanded so the City could take action. However, the record shows the City has filed a "report" with the trial court stating that it "finds that refunds are due for taxes paid by Class I Plaintiffs between the dates of February 27, 2004 and February 27, 2001." As the City has rendered a decision on Class I's refund claim, there is no need to remand the case for the City to make another decision.

*Judgment affirmed. Ruffin, C. J., Blackburn, P. J., Smith, P. J., Miller and Bernes, JJ., concur. Barnes, J., concurs in part and dissents in part.*

BARNES, Judge, concurring in part and dissenting in part.

I agree that OCGA § 48-5-380 applied to the plaintiffs' refund claim, and thus concur fully in all that is said in Division 1 (a). But, because class counsel had the authority to act on behalf of the class members they represented and thus had the authority to file a refund request that tolled the running of the statute of limitation, I must dissent from Division 1 (b) and from that portion of Division 1 (c) of the majority opinion finding that the demand date of the Class I members was the date set by the trial court rather than the date that class counsel demanded a refund on behalf of Class I. I further would hold that the trial court erred in holding that class members who opt out

---

[29] OCGA § 48-5-380 (c).

of the class are not responsible for paying attorney fees, and thus dissent from Division 2. Finally, I dissent from Division 3 because I would find the City's cross-appeal moot.

The history of this unusual class action suit is set out in the majority opinion. The trial court agreed with the plaintiffs early on that the City of Atlanta ordinance was unconstitutional, and the Supreme Court of Georgia affirmed, based on its earlier opinion in a similar case. As the trial court noted, the City has "fought the case as hard as possible, despite clear law on point governing the issue." The difficult legal issues have always been related to determining the scope of the class and the amounts to be refunded to the attorneys who paid the unconstitutional tax.

In the beginning, the trial court accepted the plaintiffs' definition of two classes, as set out in the initial complaint: one class had already demanded a refund and one class had not. But the definition of the Class I membership did not circumscribe the limits of class counsel's authority to act for the class. Rather, the definition of class membership defined the attributes of the class as it existed when the trial court certified it. Those class attributes were: lawyers who maintained a law office within the City and who paid the illegal occupation tax, but who had not filed requests for refunds pursuant to OCGA § 48-5-380 (c). The trial court properly declined to certify the Class I members for refunds because OCGA § 48-5-380 (c) requires taxpayers to file a refund demand, then wait a year before filing a lawsuit, and Class I members had not met the statutory requirements of filing a demand at that time. But the definition of Class I members — as lawyers who had not demanded a refund — did not foreclose class counsel from acting on behalf of the class and subsequently demanding a refund.

Ten days after the trial court held that the ordinance was unconstitutional, class counsel filed a demand for tax refunds with the "Council of the City of Atlanta Municipal Clerk." In the demand, class counsel noted that:

> Pursuant to Order of the Superior Court of Fulton County in the case of *Barnes v. City of Atlanta*, Civil Action No. 2000CV24809, we represent the class of persons consisting of all attorneys having an office in the City of Atlanta who have paid taxes and license fees in the form of a $400 annual occupational tax erroneously collected by the City of Atlanta for the years 1996, 1997, 1998, 1999, 2000, 2001, and 2002 who have not made application for a refund of such taxes or license fees pursuant to OCGA § 48-5-380. On behalf of our clients we

hereby file this claim for refund with the governing authority of the City in compliance with the provisions of that statute.

Attached to the demand was a list of names 579 pages long. The City does not dispute on appeal that it received this demand, for which class counsel tendered a receipt that the trial court admitted during the hearing on plaintiffs' motion for entry of a partial money judgment.

In its order on the plaintiffs' motion for entry of partial money judgment, the trial court found that the certification of Class I defined the class counsel's scope of representation, holding that

> Plaintiffs' attorneys have essentially attempted to change the scope of their representation of the members of Class One through the refund request without an Order from the Court or any other approval which would permit them to represent the class for anything other than the constitutional claims. See *Addley v. Beizer*, 205 Ga. App. 714, 719 (423 SE2d 398) (1992) ("[A]n attorney is not a general agent for all purposes, but his authority is limited to the 'particular purpose' for which he was retained and his authority to do other things must be inquired into. . . ."). Such an amendment is certainly possible, but not after the merits of the case have been determined. Fed. Rule Civ. Proc. 23 (c) (1); *Cox v. American Cast Iron Pipe Co.*, 784 F2d 1546 (11th Cir. 1986). In the instant case, the Plaintiffs filed their refund request but did not file anything with the Court seeking to amend the purposes for which the classes were certified. To attempt to do so at the hearing on final judgment is too late.
>
> In the interest of judicial economy, however, and pursuant to a suggestion made by the City, Plaintiffs' counsel may wish to consider filing a motion to amend the purposes for which Class One was certified and, of course, to publish an additional opt-out notice so that those members of Class One who do not want a refund . . . have the opportunity to opt-out.

The plaintiffs amended their complaint to seek refunds for the years 2001, 2002, and 2003 in addition to the years claimed originally, then moved to alter and amend the class certification order to recertify Class I members for refund claims. The plaintiffs also moved to add additional party plaintiffs to represent those members of Class I on whose behalf class counsel demanded a refund. The trial court granted the motion to add additional named plaintiffs, and further granted plaintiffs' motion to alter and amend the class certification.

After noting that the City had continued to fight "tooth and nail" to continue collecting and keeping the occupation tax despite the "obviousness of the invalidity of the tax," the court held:

> Rather than conclude this litigation without a Final Judgment as to those members of Class One, the Court hereby rules that the "refund request" prerequisite to filing a lawsuit does not apply to the instant case in the interests of judicial economy, and also rules that the City has waived this argument by previously indicating its willingness in judicio to abide by this procedure. Class counsel has already filed refund requests on behalf of Class One, albeit without Court approval, and, in keeping with past practice, over a year has passed without the City taking action on the requests. The refund requests therefore are valid providing the members of Class One do not opt out of the class. . . . For the Court to rule otherwise would establish a scenario wherein class counsel would be required to file a lawsuit to be approved as a class counsel for filing of refund purposes, together with all the notice requirements, and then to file another lawsuit to proceed on the claims.

The order concludes with directions to class counsel to serve notice on Class I members by certified mail and publication and establish an opt-out procedure. In a second order issued the same day, the trial court found that attorneys who filed for a refund sua sponte after the entry of the Class Certification Order but before the court's order granting a money judgment to the Class II plaintiffs were still members of Class I.

Finally, the trial court issued an order clarifying that, because class counsel made the refund request on behalf of Class I members before authorized to do so, the statute of limitation began to run on the date of the court's order on plaintiffs' motion to alter and amend the class certification, February 27, 2004, and not on the date the refund request was made, March 12, 2002.

In Case No. A05A0873, the Class I plaintiffs appealed the trial court's order on their motion to alter and amend the class certification and its ruling on the applicable statute of limitation. The City cross-appealed those orders in Case No. A05A0874.

The plaintiffs contend that the trial court erred in holding that class counsel did not have the authority to file a demand for refund on behalf of Class I members; in holding that the statute of limitation was not tolled by the filing of the lawsuit as to all class members; in holding that the statute of limitation began to run on February 24,

2004; and in holding that class members who opt out of the class will not be responsible for attorney fees and costs.

1. The first three errors are related, because they all affect the date that determines the amount of each class member's refund. OCGA § 48-5-380 provides that taxpayers may seek a refund for sums paid up to three years before they file their demand for a refund. In 1974, no action existed for the recovery of taxes paid voluntarily or under protest. *Anderson v. Blackmon*, 232 Ga. 4, 6 (2) (205 SE2d 250) (1974). Thus, "the legislature enacted § 48-5-380 to overcome the rule that a taxpayer could not recover a voluntary payment of taxes." *Nat. Health Network v. Fulton County*, 270 Ga. 724, 726 (1) (514 SE2d 422) (1999). The statute specifies that if a taxpayer pays an erroneous or illegal fee, he "may file a claim for a refund with the governing authority of the county or municipality at any time within one year or, in the case of taxes, three years after the date of the payment of the tax or license fee to the county or municipality." OCGA § 48-5-380 (b). In other words, the taxpayer is entitled to obtain a refund of erroneous or illegal taxes paid up to three years before his demand was filed.

In this case, the classes were defined by formula, not by a list of named individuals. Just because an individual class plaintiff begins as a member of one class and ends as a member of another class does not change the definition of the class. Class membership and class definition are not the same. The result of the trial court's holding that class counsel did not have the authority to make a refund demand on behalf of Class I members would be that class counsel would have to solicit and obtain permission to act from each member before acting on that member's behalf, rather than use his best judgment of which legal course to take. Such a holding would be an unusual restriction on a lawyer's ability to practice law. The comment to Rule 1.2 of the Georgia Rules of Professional Conduct, which defines a lawyer's scope of representation, states that a lawyer "should assume responsibility for technical and legal tactical issues," only deferring to the client "regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected." As a lawyer who represents an individual client would be authorized to file a demand for a tax refund on his client's behalf, a lawyer who represents a class composed of such clients should also be authorized to do so. Moreover, this holding disregards the purpose for bringing the action: to obtain the tax refunds, and not merely to have the tax declared unconstitutional.

Further, class counsel was taking the very step that the City argued should have been taken, which was to file a demand with the City for the tax refund. The absence of such a demand was the very characteristic that separated Class I from Class II. Having to "certify" class counsel to seek a refund on behalf of Class I, when the class itself

is already certified, is a procedure with no analogy to the practice of law in general, or even to the practice of law in class actions.

We should also keep in mind that "[t]he rationale for requiring exhaustion of administrative remedies is that resort to the administrative process will permit the agency to apply its expertise, protect the agency's autonomy, allow a more efficient resolution, and result in the uniform application of matters within the agency's jurisdiction." *Cerulean Cos. v. Tiller*, 271 Ga. 65, 67 (1) (516 SE2d 522) (1999). In this case, the City never acted on anyone's refund demand, either of the individuals comprising Class II or of class counsel on behalf of Class I. While I agree with the majority that this lawsuit is governed by the procedures set forth in OCGA § 48-5-380, and not by the common-law claim for money had and received, we need not interpret that statute so rigidly that we foreclose two years of class members' refunds.

2. I would also reverse the trial court's holding that Class II members who opt out of the class are not liable for attorney fees or costs.

> Under standard "American rule" practice, each litigant pays his or her own attorneys' fees. Yet, there are times when the rule must give way. For example, when a court consolidates a large number of cases, stony adherence to the American rule invites a serious free-rider problem. If a court hews woodenly to the American rule under such circumstances, each attorney, rather than toiling for the common good and bearing the cost alone, will have an incentive to rely on others to do the needed work, letting those others bear all the costs of attaining the parties' congruent goals.

(Citations omitted.) *In re: Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation*, 982 F2d 603, 606 (1st Cir. 1992) (mass disaster litigation).

In this case, allowing class members to opt out without paying any portion of the attorney fees creates a "free rider" problem, and is

> inconsistent with the fundamental premise that a class member who opts-out cannot participate in the benefits of the case and is not bound by the judgment in the case. See *Sarasota Oil Co. v. Greyhound Leasing & Financing Corp.*, 483 F2d 450, 452 (10th Cir. 1973), in which the Court pointed out that "those who elect to be excluded cannot participate in the benefits of a successful class action. . . ."

*Muldrow v. H. K. Porter Co.*, 20 Fed. R. Serv. 2d 1069 (5) (c) (N.D. Ala. 1975) (denying plaintiff's motion for "partial opt-out").

For these reasons, I respectfully dissent to all of the divisions of the majority opinion except Division 1 (a) and that portion of Division 1 (c) holding that the running of the statute of limitation was not tolled by filing the complaint.

DECIDED SEPTEMBER 6, 2005 — 

*Winburn, Lewis & Stolz, Irwin W. Stolz, Jr., Decker, Hallman, Barber & Briggs, Robert D. Feagin*, for appellants.
*Lemuel H. Ward, Linda K. DiSantis*, for appellee.