44235. HAWES, Commissioner v. SMITH et al.

WHITMAN, Judge. In this case the plaintiff taxpayers filed a suit for a refund of sales and use tax for an amount claimed to have been overpaid for the period of January 1, 1963, through December 31, 1963. The amount paid consisted of the amounts returned as due on monthly tax returns, plus an additional amount assessed by the Commissioner for taxes (which included penalties and interest) pursuant to the result of an audit. The record shows that the latter assessment was not "appealed" (a remedy available under *Code Ann.* §§ 92-8445, 92-8446) but was paid.

The plaintiff's right to sue for refund in the superior court is authorized by statute. *Code Ann.* § 92-8436, as amended. But the right to sue for refund has always been an available remedy at common law, and the only effect of having such right expressly recognized by statute has been to remove the defense of voluntary payment (*Code* § 20-1007). *Oxford v. Shuman,* 106 Ga. App. 73, 79 (2c) (126 SE2d 522). The theory of the action in a suit for refund is indebitatus assumpsit for money had and received, and the burden of proof is on the taxpayer to produce evidence that the defendant holds money which in equity and good conscience he has no right to retain. Generally see 51 AmJur 1015, 1058, Taxation, §§ 1183, 1240 (1944). Such would be accomplished by establishing the plaintiff's *right to the money and the defendant's possession.* *Merchants' Bank of Macon v. Rawls,* 7 Ga. 191, 195 (1) (50 AD 394).

2. At the trial of the case Smith testified that the business involved was a bar or lounge at which beer, mixed drinks, peanuts, potato chips, etc., were sold; that when a can of beer or

a draft beer or cocktail, etc., was sold to a customer, the price of the item was collected but they collected no tax; rather, they "absorbed it" themselves. Smith testified that every individual sale was registered in a cash register; that the cash register was capable, when appropriate keys were punched, of recording each individual sale by category and amount on a paper tape; that the cash register would also, at the end of each business day, print out the total amount of sales in each category.

Mrs. June Sasser testified that she kept a daily sales and expense record for the business; that her daily entry in the record of total sales was obtained from the daily cash register print out of total sales. The record which she had thereby compiled was admitted into evidence.

The monthly tax returns which plaintiffs had admitted into evidence showed that sales tax was calculated only as 3% of gross sales, after allowable exemptions. Mr. Smith testified that when the sales tax agent conducted the audit which led to the assessment, no request, oral or written, was made of him to produce his records of individual sales, although all such records were then in existence and available.

Also introduced into evidence was the taxpayers' claim for refund which was filed after payment of the above mentioned assessment, but which was denied by the Commissioner. The claim for refund claims that there was an overpayment (returns plus assessment), but calculates tax owed only on the basis of 3% of gross sales less allowable exemptions, and makes no reference to tax owed under the bracket system. Mr. W. B. Wise, Jr. testified that he is an accountant and that he had prepared the taxpayers' claim for refund; that he, at that time, had possession of the cash register tapes of individual sales; that in preparing the claim he used gross sales only. Wise testified that, in his opinion, the tax agent who conducted the audit used an erroneous method of reconstructing individual sales for the purpose of applying the bracket system so that the assessment which resulted was grossly in excess.

There was testimony that the cash register paper tapes which showed the individual sales had either been lost by the accountant, Mr. Wise, when he had moved his offices, or that they had burned up in a fire suffered by plaintiff Sasser. Plaintiffs introduced no evidence by which the average num-

ber and amount of individual sales comprising their gross sales could be established, i.e., they introduced no evidence by which their tax liability under the bracket system could be established.

3. The applicable tax regulation (Executive Order of the Commissioner No. 60-11, promulgated under authority of the sales and Use Tax Act, Ga. L. 1951, pp. 360, 385 (*Code Ann.* § 92-3438a); Official Compilation, Rules and Regulations of the State of Georgia, Revenue Regulation § 560-12-1.05), which was not attacked in the trial court or ruled unlawful in any respect, provides unequivocally that retailers must remit 3% of gross sales (as "gross sales" is defined in the Sales and Use Tax Act), *or* the total amount collected under the bracket system whichever amount is greater. The regulations provide that retailers *shall* collect a certain tax depending upon the price bracket in which the sale price falls, *shall* keep an accurate record of *each and every transaction* subject to the sales or use tax, and *shall* be accountable for making collections in compliance with the bracket system.

The evidence as it stood when both sides rested evidenced that the taxpayers at the time of their respective monthly returns made payments computed at 3% of gross sales quite without regard to the bracket system of calculation and payments under that system. There was no dispute as to the correctness of these returns. But there was no evidence by the taxpayers of what their liability was under the bracket system; no evidence of individual sales was introduced. In short, there was no evidentiary basis for a jury determination that there had in fact been an overpayment of taxes. In reaching this particular conclusion we do not hold that the loss of records was fatal to this aspect of the taxpayers' case. The average amount and number of individual sales comprising the gross sales could, with an appropriate evidentiary basis, be reasonably estimated and a bracket tax liability computed, leaving a jury question as to the weight to be given same. But the opinion evidence of accountant Wise that the auditing tax agent used an erroneous method of reconstructing individual sales for the purpose of applying the bracket system was not probative evidence of either the average amount and number of individual sales or the bracket tax liability thereon.

4. Taxpayers insist that they could attack the assessment and,

by showing it erroneous, thereby prove a right to a recovery. Although there is provision made for "appeal" from an assessment, *Code Ann.* §§ 92-8445, 92-8446, we have found no Georgia authority for the proposition that failure to so "appeal" would preclude any attack on an assessment in a suit for refund. Thus we can concur with taxpayers' position that the assessment was subject to attack. But if we assume that the method of assessment was erroneous, the next question is whether such a showing supports a right of recovery. The taxpayers were required to collect sales and use taxes in accordance with the bracket system and to remit 3% of gross sales or the total amount actually collected whichever was greater. Do the taxpayers by showing only that the method of assessment was erroneous thereby establish that they have paid more than due under the bracket system or were not liable for any amount thereunder, or ultimately that they are entitled to the money assessed and paid? They do not. All the evidence shows that they have never remitted or calculated their liability as any amount other than 3% of gross sales less allowable exemptions even when their records of individual sales were available. Their real contention appears to be that they were not required to collect taxes under the bracket system; that they did not in fact do so; and therefore could not be assessed for what had not been collected. This position is untenable in face of the unequivocal language of the regulation.

5. The Commissioner in assessing additional taxes in this case also imposed penalties pursuant to *Code Ann.* § 92-3426a (as effective prior to 1964). The suit contends that the penalties were unauthorized and seeks recovery therefor. Specifically, the statute provides: "When any dealer shall fail to make any return *and* pay the full amount of the tax required . . . there shall be imposed [a specified penalty]. . ." (Emphasis supplied.)

The word "and," and whether it should be interpreted as having a conjunctive or disjunctive meaning in any particular context, has caused much difficulty in the law. Courts across the land have said that "and" may be construed as "or," and vice versa, when necessary to carry out legislative intent and to avoid an unreasonable or absurd result. See the numerous cases collected under the word "and" in 3 Words and Phrases (1953). And see *Clay v. Central R. Co.,* 84

Ga. 345, 348 (10 SE 967); *Reynolds v. Wingate,* 164 Ga. 317, 323 (138 SE 666); *Fennell v. State,* 218 Ga. 418, 421 (128 SE2d 43).

"While in interpreting statutes it is sometimes permissible to read 'and' [as] 'or,' we do not think that in a statute which imposes a forfeiture or a penalty this change in wording should be made by construction, when by the terms of the statute as framed it requires the concurrence of two things to work a forfeiture or impose the penalty, and the result of a change in the verbiage would have the effect to bring about a forfeiture or penalty by an existence of only one of the two things." *Roby v. Newton,* 121 Ga. 679, 683 (49 SE 694, 68 LRA 601). The statute in the present case, involving taxation with penalty provisions, is subject to this principle. Thus the word "and" in the statute will be considered to have its normal conjunctive meaning. This being so, and the evidence showing that the taxpayers did make returns, the imposition of penalties was not authorized. The amount of the penalties imposed and paid was not in dispute. (*Code Ann.* § 92-3426a, as amended by Ga. L. 1964, pp. 57, 58, uses "or" instead of "and.")

6. We must now summarize this state of affairs. The plaintiff taxpayers failed to produce any evidence which would authorize a jury to find that the Commissioner had collected and assessed *taxes* over and beyond the taxpayers' liability. But taxpayers did establish that the Commissioner had exacted a certain amount as penalties, which, as a matter of law, he was not entitled to impose. There was no dispute as to the amount of such penalties.

Thus, the Commissioner's motion for a *general* directed verdict was properly overruled and his enumeration of error on this point is without merit. But the Commissioner's enumeration of error that the verdict and judgment is not supported by the evidence, and that the trial court therefore erred in rendering a judgment for the plaintiffs, does have merit. The verdict and judgment are for an amount greatly in excess of the penalties assessed.

The judgment is affirmed on condition that such amount as exceeds the penalties and interest on the penalties included in the judgment, be written off; otherwise reversed.

*Judgment affirmed on condition. Jordan, P. J., and Hall, J., concur.*

163

ARGUED FEBRUARY 5, 1969—DECIDED JULY 2, 1969—
REHEARING DENIED JULY 25, 1969—

Arthur K. Bolton, Attorney General, William L. Harper, Louis F. McDonald, Assistant Attorneys General, for appellant. Thompson & Benken, Louis A. Thompson, for appellees.