A06A0682. RITE-AID CORPORATION et al. v. DAVIS.
(634 SE2d 480)

BARNES, Judge.

Rite-Aid Corporation and the Insurance Company of the State of Pennsylvania appeal the superior court's order reversing the decision of the workers' compensation appellate division against Barbara Davis. The superior court reinstated the decision of the administrative law judge ("ALJ"), who found Davis entitled to compensation for a catastrophic injury. For the reasons that follow, we affirm.

1. OCGA § 34-9-200.1 (g) (6) defines "catastrophic injury." The statute as it existed in May 1996 when Davis was injured defined "catastrophic injury" six ways. The first five ways describe particular injuries that qualify as catastrophic, such as, for example, a spinal cord injury causing paralysis, a severe closed-head injury, or loss of a foot or leg. The sixth category defined catastrophic injury as "[a]ny other injury of a nature and severity that prevents the employee from being able to perform his or her prior work *or* any work available in substantial numbers within the national economy." (Emphasis supplied.) The statute was changed in 1997 to change the "or" emphasized above to "and," and to limit consideration of the work performed in the national economy to work "for which such employee is otherwise qualified." If Davis is classified as having a catastrophic injury, then the 400-week limit on benefits does not apply to her. OCGA § 34-9-261.

Davis was injured when she unloaded boxes weighing more than 100 pounds, which she slid off of a stack and dropped onto her neck and shoulder. The ALJ found that Davis presented evidence that she could not perform her prior work, and thus her injury was catastrophic even though she could perform work available in substantial numbers in the national economy for which she is qualified. The appellate division, however, reversed the ALJ, concluding that the legislators actually meant to require a claimant to establish both that she could not perform her prior work *and* that she could not perform any other work available in substantial numbers within the national economy. The appellate division accepted all of the ALJ's findings of fact, "as such findings are supported by a preponderance of competent and credible evidence contained within the record on review." On appeal, the superior court reversed the appellate division and reinstated the award to Davis, finding that the statute as written was not ambiguous, absurd, or wholly impractical. "The code says 'or,' and this court can find no grounds to interpret 'or' to mean 'and,' particularly without some type of evidence that there was error in the drafting of the statute."

While we must construe the evidence in the light most favorable to the party prevailing before the State Board, whose findings are conclusive and binding if supported by any evidence, *Davis v. Carter Mechanical*, 272 Ga. App. 773, 775 (612 SE2d 879) (2005), we review the application of law to those findings de novo. *Hill v. Omni Hotel at CNN Center*, 268 Ga. App. 144, 146 (601 SE2d 472) (2004).

Rite-Aid argues on appeal that the trial court erred as a matter of law in reversing the appellate division's decision "by failing to acknowledge the Legislature's intent when interpreting OCGA § 34-9-200.1 (g) (6)," which was to use "and" instead of "or" in the 1995 amendment. To support that argument, Rite-Aid claims that three

factors establish the legislative intent: (1) its 1997 amendment of the Code to change "or" to "and"; (2) the legislature changed the "error" the first chance it had; and (3) the legislature did not intend to create a special class of catastrophic cases having a lesser burden of proof. The discussion of the legislative history contained within Rite-Aid's brief, however, contains no citations to the record or any authority to support its contention that the initial draft of the 1995 amendment required a claimant to prove both that she could not perform her prior work *and* that she could not perform any other work available in substantial numbers, and that somehow the word "and" was changed to "or" due to a typographical error.

The Supreme Court of Georgia summarized the guidelines for statutory interpretation as follows:

> In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. *If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words.* If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and "the old law, the evil, and the remedy." OCGA § 1-3-1 (a).

(Punctuation and footnotes omitted; emphasis supplied.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999). Thus the first step in construing legislative intent of OCGA § 34-9-200.1 (g) (6) is to determine whether its words are "plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results" and determine whether it is susceptible to interpretation. Id. "Where a statute is susceptible of one and only one construction, this court can not adopt a different construction merely to relieve [the] parties of some real or imagined hardship; but if the law is valid, we can only apply it in the form into which it was finally adopted as a statute by the lawmaking body." (Citation and punctuation omitted.) *State Revenue Comm. v. Nat. Biscuit Co.*, 179 Ga. 90, 100 (175 SE 368) (1934).

In this case, "[w]here there is no ambiguity, our job is simply to look at the words the legislature used, not to interpret what we think they must have meant." (Citation and punctuation omitted.) *Gordon*

*v. Atlanta Cas. Co.*, 279 Ga. 148, 149 (611 SE2d 24) (2005). OCGA § 34-9-200.1 (g) (6) clearly provides that a worker has a catastrophic injury if he proves that he cannot perform his prior work *or* that he cannot perform any work available in substantial numbers within the national economy. A court "should never by construction add to; take from, or vary the meaning of unambiguous words in the statute." *Brooks v. Brooks*, 185 Ga. 549, 554 (195 SE 869) (1938). Where there is no ambiguity, as in this case, our job is simply to look at the words the legislature used, not to interpret what we think they must have meant.

Consideration of the three statutory changes to this subsection from 1992 to 1997 supports this conclusion. Before 1992, the law provided no cap on temporary total disability income benefits (OCGA § 34-9-261 (1991)), the need for rehabilitation benefits was evaluated in all claims, and "catastrophic injury" was defined, in addition to five specific physical injuries, as "any other injury determined to be catastrophic in nature by the board." OCGA § 34-9-200.1 (h) (6) (1991).

In 1992, the legislature set a cap of a maximum of 400 weeks from the date of injury, unless the injury was catastrophic. Catastrophic injuries were defined as the five specific injuries, or when the claimant suffered "[a]ny other injury of a nature and severity as has qualified or would qualify an employee to receive disability income benefits under Title II or supplemental security income benefits under Title XVI of the Social Security Act as such Act exists on July 1, 1992, without regard to any time limitations provided under such Act." OCGA § 34-9-200.1 (g) (6) (1992). Claimants with catastrophic injuries were entitled to mandatory rehabilitation services, but the need for such services was no longer evaluated for all claims. OCGA § 34-9-200.1 (a).

In 1995, the legislature changed the language so that a claimant was no longer automatically deemed to have a catastrophic injury simply because he was awarded federal disability benefits, but was entitled to introduce that award into evidence for consideration. OCGA § 34-9-200.1 (g) (6) (1995). The 1995 legislation also now provided that the claimant had to prove he had an injury "that prevents the employee from being able to perform his or her prior work or any work available in substantial numbers within the national economy."

The legislature amended the Code section again in 1997, changing the definition of catastrophic injury as one "of a nature and severity that prevents the employee from being able to perform his or her prior work *and* any work available in substantial numbers within the national economy *for which such employee is otherwise qualified.*" OCGA § 34-9-200.1 (g) (6) (A) (1997). A federal disability award was

still admissible in evidence and entitled to due consideration and deference. This version of the statute has remained in force since that time.

In this case, the appellate division held that by reading OCGA § 34-9-200.1 (g) "in context with the Act as a whole, . . . the intent was not to define a catastrophic injury less strictly than the generally accepted definition of ordinary total disability," and also found that the 1997 change was "further guidance into the intent of the legislature." While the employer/insurer makes this argument on appeal and contends that the 1997 change is evidence that the 1995 statute contained a typographical error, no evidence of record supports that contention. Reviewing the three statutory changes in 1992, 1995, and 1997, the legislature appears to be refining its definition of catastrophic injury over time. It may have changed the statute in 1997 for other reasons, e.g., because it decided that the previous version was too lenient in one respect — because the claimant did not have to prove both inability to perform prior work as well as inability to perform work in the national economy — and too harsh in another respect — because the work he could perform in the national economy did not have to be work for which he was qualified. The Supreme Court of Georgia noted that

> [w]hen subsection (g) was amended in 1995, (g) (6) made a Social Security award of disability or supplemental security income benefits an evidentiary matter to be considered when deciding whether an injury was "catastrophic." See Ga. L. 1995, p. 642, § 9. The 1995 modification of subsection (g) (6) was an effort to eliminate the confusion which had arisen in applying Social Security findings to state workers' compensation proceedings. Kimberly A. Stout, Labor and Industrial Relations, 12 GSU L. R. 280, 287.

*Cobb County School Dist. v. Barker*, 271 Ga. 35, n. 1 (518 SE2d 126) (1999). We cannot conclude that the legislature made a typographical error in 1995; we can only construe the statute as it existed.

"[W]here words have a definite and well-settled meaning at common law, it is to be presumed, unless some good reason to the contrary appears, that this same meaning attaches to them when used in a statute." *Johnson v. Bradstreet Co.*, 87 Ga. 79, 82 (13 SE 250) (1891). On the other hand, "[w]here the letter of the statute results in absurdity or injustice or would lead to contradictions, the meaning of general language may be restrained by the spirit or reason of the statute." *New Amsterdam Cas. Co. v. Freeland*, 216 Ga. 491, 495 (117 SE2d 538) (1960). In this case, it is not absurd or unjust to classify someone's injury as catastrophic if he has shown that he can no longer

perform any of his prior work. Accordingly, the trial court did not err in reversing the decision of the appellate division.

2. Rite-Aid also argues that, even if we apply the statute as it was written in 1995, Davis failed to prove she could not return either to her former work or to any work available in substantial numbers in the national economy.

The parties stipulated that Davis suffered a compensable injury to her right arm and neck, and that her temporary total disability, temporary partial disability, and permanent partial disability benefits have been paid. Her work restrictions as a result of those injuries were "no repetitive overhead lifting, occasionally only, no lifting or carrying greater than 25 pounds, and allowing frequent changes of position two to three times an hour as needed." Davis was 59 years old as of the hearing in May 2004. She worked for Rite-Aid for 18 years, as a cashier, merchandiser, and, for the last 12 years, as a store manager.

The ALJ found that the duties of that position included "opening the store, preparing schedules, bookkeeping, hiring and training employees, unloading trucks, stocking, and cleaning." After reviewing Davis's testimony, as well as the testimony of her vocational expert and the medical evidence of record, the ALJ found that evidence established that "the Employee is capable of performing sedentary jobs available in substantial numbers in the national economy for which she is otherwise qualified." The ALJ also found "by a preponderance of the credible evidence that Davis was not able to perform her prior work as a store manager, merchandiser or cashier due to the neck and right shoulder injuries she sustained in the May 31, 1996 work-related accident." The appellate division accepted the ALJ's findings, as they were "supported by competent and credible evidence contained within the record on review."

Rite-Aid argues that Davis has the skills and ability to perform her prior jobs, describing her neck injury as "nothing more than cervical disk disease." The company also points out that Davis's condition had continued to worsen over the last eight years even though she had not been working, and thus her symptoms were "not squarely related to her work injury of May 31, 1996." It reviews the evidence in the record supporting its contention, including the examination and conclusions of an independent medical examiner who thought Davis could return to regular duty work in regard to her neck and right shoulder problems. Finally, the company describes all of Davis's other, nonwork-related injuries and illnesses that contributed to her physical condition, such as diabetes and a left arm injury, and argues that because she can care for herself, drive a car, sew, go to the grocery store, and perform her household chores, she should be able to work.

The parties stipulated to Davis's current work restrictions resulting from her compensable injury, and Davis testified that she could not perform the requirements of her store manager job due to these injuries. Her treating physician determined she could not return to the store manager job, and her vocational expert testified that she could not work as a cashier, merchandiser, or store manager due to her lifting restrictions or her positional change requirement. He testified that she also could not perform the jobs she had before she worked at Rite-Aid, which were hanging yarn in a carpet factory and working on an assembly line making bulbs.

As noted earlier, we affirm the factual findings of the ALJ and appellate division if any evidence supports them. *Davis v. Carter Mechanical*, supra, 272 Ga. at 775. Under the "any evidence" standard, the ALJ and appellate division did not err in concluding Davis could not perform any of her prior work due to her compensable injury.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur. Miller, J., concurs in judgment only. Andrews, P. J., Johnson, P. J., and Bernes, J., dissent.*

BERNES, Judge, dissenting.

I respectfully dissent. In contrast to the majority, I believe that we must interpret the "or" in former OCGA § 34-9-200.1 (g) (6) as a conjunctive "and" in order to avoid an absurd result under the Georgia workers' compensation statutes.

Under OCGA § 34-9-261, an employee who sustains a temporary total disability is entitled to weekly workers' compensation benefits for a maximum of 400 weeks from the date of injury. But, this cap on weekly benefits does not apply to an employee who suffers a catastrophic injury as that term is defined in the former and current versions of OCGA § 34-9-200.1 (g) (6). By placing a cap on payments for temporary total disability but not for catastrophic injuries, the General Assembly clearly intended to draw a legal distinction between these two categories of injuries, and certainly did not intend to define a catastrophic injury *less strictly* than the definition of temporary total disability. See James B. Hiers, Jr. and Robert R. Potter, Ga. Workers' Compensation Law and Practice § 17-4, at 315, n. 3 (4th ed. 1999) ("The legislative intent was for there to be a cap for the vast majority of injuries, but for no cap to exist for the most significant or catastrophic injuries."). Notably, however, the majority's interpretation of OCGA § 34-9-200.1 (g) (6) as it existed in 1996 fails to draw any meaningful distinction between these two categories.

In prior cases addressing temporary total disability under OCGA § 34-9-261, we have held that in order for an employee to be found temporarily totally disabled, he must be "unable to return to his

regular employment or to procure remunerative employment at a different occupation suitable to his impaired capacity." (Citation and punctuation omitted.) *Cedartown Nursing Home v. Dunn,* 174 Ga. App. 720, 725 (2) (330 SE2d 905) (1985). See also *Hensel Phelps Constr. Co. v. Manigault,* 167 Ga. App. 599, 604 (2) (307 SE2d 79) (1983); *Waycross Coca-Cola Bottling Co. v. Hiott,* 141 Ga. App. 600, 601 (234 SE2d 111) (1977). Consequently, we have held that a finding of temporary total disability turns on whether the employee is able "to find *any* work for which he is suited by training and experience" as a result of the injury suffered. (Emphasis in original.) *United States Fidelity &c. Ins. Co.,* 177 Ga. App. 684, 685 (340 SE2d 284) (1986). See H. Michael Bagley et al., Workers' Compensation, 44 Mercer L. Rev. 457, 460 (C) (1992). However, the majority defines the relevant "or" in former OCGA § 34-9-200.1 (g) (6) in the disjunctive, such that an employee can prove he has suffered a catastrophic injury by showing only that he cannot return to his prior work. Although the majority does not precisely define what constitutes "prior work," it is clear that, at best, the majority has ruled that the statutory framework effective in 1996 defined catastrophic injury essentially *the same as* temporary total disability or, at worst, *less stringently.*

This cannot be the law. Well-established principles of statutory construction require that where the literal language of a statute would lead to an absurdity or contradiction, or would render some statutory language meaningless or mere surplusage, "then the literal must yield." (Citation and punctuation omitted.) *State v. Nix,* 220 Ga. App. 651, 652 (1) (469 SE2d 497) (1996). See also *Colonial Life &c. Ins. Co. v. Heveder,* 274 Ga. App. 377, 379 (618 SE2d 39) (2005). Applying this principle, Georgia courts on multiple occasions have interpreted the word "or" as having a conjunctive meaning "when necessary to carry out legislative intent and to avoid an unreasonable or absurd result." *Hawes v. Smith,* 120 Ga. App. 158, 161 (5) (169 SE2d 823) (1969). See, e.g., *Comer v. American Tel. &c. Co.,* 176 Ga. 651 (2) (168 SE 786) (1933); *Clay v. Central R. & Banking Co.,* 84 Ga. 345 (10 SE 967) (1890); *Vito v. Dhillon,* 269 Ga. App. 899, 901-902 (1) (a) (605 SE2d 602) (2004); *K Mart Corp. v. Adamson,* 192 Ga. App. 884, 886 (386 SE2d 680) (1989). I believe that the present case likewise requires us to interpret "or" in the conjunctive, since applying the literal meaning would lead to the absurd result of allowing an employee to obtain catastrophic injury benefits by meeting a standard equal to or less strict than the standard for proving temporary total disability.

Furthermore, interpreting "or" as having a conjunctive meaning in this case would avoid the "unreasonable consequence[ ]" of under-mining clear legislative intent. *K Mart Corp.,* 192 Ga. App. at 886. See also *Heveder,* 274 Ga. App. at 379. In the recent case of *Davis v. Carter*

*Mechanical*, 272 Ga. App. 773, 776 (1) (612 SE2d 879) (2005), this Court discussed the General Assembly's intent behind enacting the 1995 amendment to OCGA § 34-9-200.1 (g) (6), which added the statutory language at issue here. We explained that the 1995 amendment "changed the Act's definition of catastrophic injury to adopt language similar to that employed by the Social Security Administration . . . in determining the availability of disability benefits" and "was an effort to bring the two provisions in line." (Punctuation omitted.) Id. See also Thomas A. Eaton and David B. Mustard, Report of the Governor's Workers' Compensation Review Commission, 38 Ga. L. Rev. 1241, 1308-1309 (VIII) (a) (2004). And, we pointed out that to qualify for disability under Social Security, a claimant must "*not only* [be] unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." (Emphasis supplied.) *Davis*, 272 Ga. App. at 776 (1) (quoting 42 USC § 423 (d) (2) (A)). The majority's interpretation of the "or" contained in the 1995 amendment to OCGA § 34-9-200.1 (g) (6) undermines the General Assembly's purpose discussed in *Davis* of adopting statutory language similar to the federal Social Security provision, which clearly set forth disability requirements in the *conjunctive*.

For these reasons, I am compelled to dissent from the majority opinion. This Court should reverse the superior court's order that reinstated the decision of the administrative law judge.

I am authorized to state that Presiding Judge Andrews and Presiding Judge Johnson join in this dissent.

DECIDED JULY 13, 2006 — 

*Drew, Eckl & Farnham, John C. Bruffey, Jr., Christi L. Hodges,* for appellants.

*Westmoreland, Patterson, Moseley & Hinson, Thomas W. Herman,* for appellee.