## A11A2211. CITIBANK (SOUTH DAKOTA), N.A. v. GRAHAM.
(726 SE2d 617)

Adams, Judge.

Citibank (South Dakota), N.A. in its own capacity and as successor in interest to Citibank USA, N.A. ("Citibank") appeals the trial court's dismissal of its lawsuit against Bart L. Graham, Commissioner of the Georgia Department of Revenue (the "Commissioner"), seeking a refund for taxes paid on bad debts. We affirm for the reasons set forth below.

Citibank provides financing for "private label credit card" programs (the "Programs") through which consumers finance purchases from various retailers. The Programs permit the retailer to offer financing for the purchase of the retailer's merchandise to its qualifying customers. Under the terms of the Programs, Citibank paid the retailers the outstanding amounts on the accounts, and the retailers disclaimed any and all ownership rights to the credit card accounts.

When consumers defaulted on these Citibank-financed credit card accounts and the accounts became uncollectible (the "Bad Debt"), a portion of the uncollected debt necessarily included amounts used to pay Georgia sales tax. Citibank claimed these uncollected accounts as a bad debt deduction for federal income tax purposes. In addition, Citibank filed a number of claims with the State of Georgia for a refund of the portion of the Bad Debt representing the payment of Georgia sales tax, but the Department of Revenue (the "Department") denied these claims.

Citibank subsequently filed a complaint against the Commissioner asserting that it is entitled to a refund for sales tax paid during the period January 1, 2004 and September 30, 2006, in the aggregate amount of $10,147,730 under OCGA § 48-8-45 (the "Bad Debt Statute") and OCGA § 48-2-35 (the "General Refund Statute"). The trial court dismissed the complaint, and we granted Citibank's application for discretionary appeal.

1. Citibank asserts that the trial court erred in holding that Citibank is not entitled to a refund under the Bad Debt Statute. At the relevant time, that statute provided in pertinent part:

> Any person reporting on the accrual basis of accounting shall be allowed a deduction for bad debts under rules and regulations of the commissioner on the same basis that bad debts are allowed as a deduction on state income tax returns. *In the case of an assignee of credit card debt purchased directly from a dealer without recourse, the assignee reporting on the accrual basis of accounting or a credit card bank*

*which extends such credit to customers under a private label credit card program shall be allowed a deduction for bad credit card debts under rules and regulations of the commissioner on the same basis that bad credit card debts are allowed as a deduction on state income tax returns.*

(Emphasis supplied.) OCGA § 48-8-45 (c) (Ga. L. 1998, p. 604, § 1).[1]

The Bad Debt Statute, by its terms, provides a deduction based upon bad credit card debts, but because Citibank does not remit sales taxes to the Department or file sales tax returns in Georgia, it cannot utilize this deduction. Instead, it seeks a refund of the sales tax paid by its private label merchants on the credit card purchases. Citibank asserts that the Bad Debt Statute entitles it to a refund of the amounts it advanced to consumers to pay Georgia sales tax because the statute provides a deduction to private label credit card companies "on the same basis that bad credit card debts are allowed as a deduction on state income tax returns." Citibank argues that we should interpret this language to provide it a refund of sales tax because a "refund of income taxes is allowed if the bad debt deduction included as part of a net operating loss on a state income tax return results in an overpayment of taxes in the applicable year." Accordingly, Citibank argues that the "on the same basis" language in the Bad Debt Statute entitles it to a refund of the tax paid by its Program merchants. We disagree.

Our interpretation of the Bad Debt Statute must begin with "the fundamental principle of statutory construction that requires us to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else." (Punctuation and footnote omitted.) *Fidelity and Deposit Co. &c. v. Lafarge Bldg. Materials*, 312 Ga. App. 821, 823 (720 SE2d 288) (2011). In drafting the Bad Debt Statute, the General Assembly chose to grant only a deduction for bad credit card debt, and this Court is without power to expand the plain language of the statute.[2] "When we consider the meaning of a statute,

---

[1] The emphasized language was first altered and later deleted by subsequent amendments to the statute. Ga. L. 2008, p. 473, § 3; Ga. L. 2010, p. 507, § 12; Ga. L. 2011, p. 46, § 6.

[2] Contrary to Citibank's argument, our interpretation of the statute does not render the 1998 amendment meaningless simply because Citibank and other companies engaged in financing for private label credit card companies may not be able to take advantage of the deduction. The amendment also allowed deductions for assignees of bad credit card debt. Indeed, an earlier decision by this Court could be read as interpreting the 1998 amendment to provide a deduction only for such assignees. The opinion notes that "having provided for a bad

we must presume that the General Assembly meant what it said and said what it meant," *Clark v. Rush*, 312 Ga. App. 333, 336 (2) (718 SE2d 555) (2011) (citation omitted), so, "[w]hen a statute contains clear and unambiguous language, such language will be given its plain meaning and will be applied accordingly." *Opensided MRI of Atlanta v. Chandler*, 287 Ga. 406, 407 (696 SE2d 640) (2010). See also *Frazier v. Southern R. Co.*, 200 Ga. 590, 593 (2) (37 SE2d 774) (1946) (appellate courts "must frequently construe the language of a statute, but such courts may not substitute by judicial interpretation language of their own for the clear, unambiguous language of the statute, so as to change the meaning").

That the legislature's choice of the word "deduction" was intentional is demonstrated by a comparison with OCGA § 48-8-58, which establishes the tax implications for property returned after a purchase. As the statute existed at the pertinent time, it provided a *deduction* from gross sales for property returned within 90 days of purchase, a tax *credit* for property returned after 90 days and a tax *refund* for dealers who had retired from business. Ga. L. 1978, pp. 309, 632-633, § 2. Thus, the legislature knew how to provide a refund when it chose to do so and how to distinguish among deductions, credits and refunds; therefore, we must presume that the legislature's failure to provide a refund under OCGA § 48-8-45 was "a matter of considered choice." (Citations and punctuation omitted.) *Deutsche Bank Nat. Trust Co. v. JP Morgan Chase Bank*, 307 Ga. App. 307, 311 (1) (b) (704 SE2d 823) (2010).

We must also be guided by the principle that "where one seeks the benefit of an exemption from taxation, any such exemption must be strictly construed and will not be found unless the terms under which it is claimed clearly and distinctly show that such was the intention of the legislature." (Citations and punctuation omitted.) *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. 141, 145 (1) (542 SE2d 538) (2000). Deductions, tax credits and refunds "are allowed as a matter of legislative grace and are authorized only where there is a clear statutory provision for them." (Citations omitted.) *Brosnan v. Undercofler*, 111 Ga. App. 95, 96 (140 SE2d 517) (1965). See also *Fulton Bag & Cotton Mills v. Williams*, 212 Ga. 783, 786 (2) (95 SE2d 848) (1956).

---

debt deduction to assignees of bad credit card debt, the legislature has impliedly denied it to any others," perhaps interpreting the phrase "[i]n the case of an assignee of credit card debt purchased directly from a dealer without recourse" as applying to both assignees reporting on the accrual basis and credit card banks extending credit under a private label program. *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. 141, 142 (1) (542 SE2d 538) (2000).

Without specific legislative authorization for a refund of Georgia sales tax on bad debts, we are without authority to re-write the statute to provide such relief.[3] Thus, we conclude the only potential tax relief afforded by former OCGA § 48-8-45 (c) is a deduction.

2. Citibank also contends that it is entitled to a refund of the taxes paid by its private label merchants under the General Refund Statute. At the pertinent time, that statute provided, in relevant part:

> A taxpayer shall be refunded any and all taxes . . . which are determined to have been erroneously or illegally assessed and collected from such taxpayer under the laws of this state, whether paid voluntarily or involuntarily, and shall be refunded interest . . . on the amount of the taxes . . . at the rate of 1 percent per month from the date of payment . . . .

OCGA § 48-2-35 (a). Citibank argues that it should be considered a taxpayer because it advanced the money to pay for the consumer's purchases and accompanying sales tax. We disagree.

Citibank is not a taxpayer entitled to a refund under OCGA § 48-2-35. Only the taxpayer who has the burden of paying the tax may receive a refund of sales tax paid. *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. 22, 23 (2) (608 SE2d 611) (2005). See also *James B. Beam Distilling Co. v. State of Ga.*, 263 Ga. 609, 611 (2) (437 SE2d 782) (1993) (wholesaler determined to be taxpayer for purposes of refund statute where excise tax code placed burden on manufacturer or wholesaler to affix tax stamp denoting payment of tax, and manufacturer paid the tax, but billed and collected the tax amount from the wholesaler). Each time a purchase is made using the private label credit cards, it is the customer who has the obligation to pay sales tax to the retailer at the time of purchase. OCGA §§ 48-8-30 (b) (1); 48-8-34 (a). And the retailer is required to levy the tax as part

---

[3] We are not persuaded by Citibank's argument that the 2011 amendment to OCGA § 48-8-45 supports its proffered interpretation of the 1998 amendment. The 2011 amendment establishes both a deduction for bad debts and a refund where the amount of the bad debt exceeds the taxes paid, but it allows only dealers to take advantage of them. Ga. L. 2011, p. 38, § 6. Citibank argues that the legislature's decision to clearly limit any tax relief to dealers indicates that it was entitled to refund under the earlier version of the statute. But the amendment could merely reflect the legislature's intent to eliminate any possibility of a bad credit debt deduction for credit card companies or it could merely be a codification of the Department's historical interpretation of the statute, which apparently limited potential deductions "only to a dealer and only under certain circumstances." (Footnote omitted.) *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. at 144 (1). See also Ga. Comp. R. & Regs. r. 560-12-1-.06.

of each sale, and the sale becomes "a debt from the purchaser or consumer to the dealer." OCGA § 48-8-35. The retailer, in turn, has the obligation of remitting all collected sales taxes to the Commissioner. OCGA § 48-8-30 (b) (1). "Thus, the tax imposed became a tax dual in nature, as both purchaser and retailer were liable for the tax and the tax was imposed upon each sale when the contract was executed." (Citations omitted.) *Gen. Motors Acceptance Corp. v. Jackson*, 247 Ga. App. at 143 (1).

In contrast, Citibank had no statutory obligation to pay, remit or prove payment of any tax. It is simply a third-party lender that contracted to advance the money for the consumer, and ultimately the merchant, to meet their obligations to pay the sales tax. Because Citibank did not bear the burden for the tax, it is not a taxpayer and it has no standing to invoke this provision of the tax code. Citibank's only obligation was contractual, and thus any recourse available to it is also contractual. Accordingly, Citibank's recourse is against the consumer who defaulted on the debt or possibly through any provisions in the Program contracts assigning responsibility for bad debts among the various parties, but it is not entitled to a refund under the General Refund Statute.

3. We also reject Citibank's argument that it is entitled to pursue a common law claim for refund of these taxes. This Court has held that the General Refund Statute represents a partial waiver of such immunity by the State, and any claim for taxes erroneously or illegally assessed is limited to the terms of that statute. *Sawnee Elec. Membership Corp. v. Ga. Dept. of Revenue*, 279 Ga. at 23 (2); *Ga. Emission Testing Co. v. Jackson*, 259 Ga. App. 250, 252 (576 SE2d 642) (2003). "Since the decision to waive sovereign immunity is a voluntary act on the part of the State, the State may prescribe the terms and conditions on which it will consent to be sued." (Citation omitted.) *Georgia Emission Testing Co. v. Jackson*, 259 Ga. App. at 252.

But Citibank points to this Court's decision in *Hawes v. Smith*, 120 Ga. App. 158 (1) (169 SE2d 823) (1969), to argue that it has a right to seek a refund under the common law. In that case, the plaintiff taxpayer sought a refund of sales and use tax under former Ga. Code Ann. § 92-8436, one predecessor to the current General Refund Statute. The *Hawes* opinion acknowledged that Ga. Code Ann. § 92-8436 gives the plaintiff the statutory authority to seek a refund, but recognized that the right to sue for a refund arose at common law under the theory of indebitatus assumpsit for money had and received. *Hawes v. Smith*, 120 Ga. App. at 158 (1). See also *Oxford v. Shuman*, 106 Ga. App. 73, 78 (2) (b) (126 SE2d 522) (1962). Although

the *Hawes* opinion and the *Oxford* opinion upon which it relies both discuss the question of a tax refund in terms of the common law theory of money had and received, both cases actually considered refund claims under specific statutory authority. Thus, the issue of sovereign immunity did not arise because the legislature had granted the plaintiff taxpayer the specific right to bring the suit at issue. Id. Nevertheless, we do not read these cases as holding that a taxpayer has a separate common law claim for a tax refund without regard to the General Refund Statute. See *Barnes v. City of Atlanta*, 275 Ga. App. 385, 388 (1) (a) (620 SE2d 846) (2005) (even if the right to seek a tax refund existed at common law, "it does not follow that the plaintiffs could simply bypass" the requirements of the applicable refund statute), reversed on other grounds, *Barnes v. City of Atlanta*, 281 Ga. 256 (637 SE2d 4) (2006). In any event, whatever the theory asserted, Citibank did not pay any sales tax and thus it had no standing to bring any claim for a tax refund.

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur.*

DECIDED MARCH 23, 2012 — 

*Parker, Hudson, Rainer & Dobbs, John W. Mitchell, William J. Holley II*, for appellant.

*Samuel S. Olens, Attorney General, Frances C. Mulderig, Warren R. Calvert, Assistant Attorneys General*, for appellee.