**FIRST DIVISION**
**BARNES, P. J.,**
**MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 18, 2020**

# In the Court of Appeals of Georgia

A20A0131. FIFFEE v. JIGGETTS.

BARNES, Presiding Judge.

Following the grant of her application for discretionary review, Luerica Fiffee (the "mother") appeals from the trial court's denial of her motion to vacate a custody modification order granting primary physical custody of the children to Michael Jiggetts (the "father"). According to the mother, the trial court's custody modification order must be set aside because notice of the hearing conducted on the father's motion to modify custody was served on her counsel by facsimile, and, as a result, did not satisfy the statutory requirements for service found in OCGA § 9-11-5 (b) and constituted a nonamendable defect on the face of the record. We agree with the mother and therefore reverse.

The record reflects that the parties, who never married, have six minor children. The mother moved to New York with the four youngest children, and the father remained in Georgia with the two oldest children. In August 2018, the trial court granted the parties joint legal custody of the children, awarded the mother primary physical custody of the four youngest children, and awarded the father primary physical custody of the two oldest children (the "Custody Order").[1] The trial court also ordered the father to pay child support.

Less than a month later, on September 7, 2018, the father filed a verified motion to vacate the Custody Order, motion for new trial, and motion to modify custody and child support (the "Motion to Modify Custody"). In connection with his Motion to Modify Custody, the father filed an affidavit asserting that additional people were living in the mother's apartment in New York and that the living conditions were unsanitary and unsafe such that he should be granted primary physical custody of all six children.

On September 25, 2018, the trial court entered an order scheduling a hearing on the father's Motion to Modify Custody for seven days later, on October 2, 2018

---

[1] The trial court previously entered orders legitimating Jiggetts as the father of the six children.

2

(the "Scheduling Order"). The bottom of the one-page Scheduling Order contained the notation "cc:" followed by the names of each party's counsel and a telephone number for each, and it is undisputed that the Scheduling Order was sent to counsel by facsimile.

The hearing on the father's Motion to Modify Custody was held on October 2, during which neither the mother nor her counsel appeared.[2] At the conclusion of the hearing, the trial court ruled from the bench that it would vacate the Custody Order and award primary physical custody of all six children to the father, and counsel for the father stated that she would prepare an order to that effect.

Two days later, the mother's counsel submitted a letter to the trial court asserting that he had not learned of the October 2 hearing until after it occurred. According to counsel, he received all facsimiles transmitted to his office as attachments to emails, and he acknowledged that he received the trial court's faxed Scheduling Order through his email system. However, counsel stated that he had been out of town from September 25 to October 1, had a backlog of accumulated emails, and did not see the faxed Scheduling Order until after the October 2 hearing. Counsel

---

[2] The only portion of the October 2 hearing transcript in the appellate record is a three-page excerpt containing the trial court's ruling from the bench.

3

asserted that notice of the hearing had been insufficient and requested that a date be scheduled for the mother to "make the trip [to Georgia] and be heard" on the father's Motion to Modify Custody, given that evidence had been presented by the father at the hearing.

The trial court did not schedule an additional hearing in light of counsel's letter. Rather, on October 15, 2018, the trial court entered an order granting the father's Motion to Modify Custody, awarding the father primary physical custody of all six children and ordering the mother to pay child support (the "Modification Order"). The trial court recited that the Scheduling Order had been served on the mother's counsel on September 25, 2018, that a hearing on the father's motions was conducted on October 2, and that the mother and her counsel failed to appear at the hearing. The trial court also included factual findings based in part on the evidence heard during the October 2 hearing.[3]

---

[3] The father asserts in his appellate brief that nothing in the Modification Order indicates that the trial court's factual findings were based on evidence presented at the October 2 hearing, but the Modification Order includes the express recital, "The Court having considered the Motion and evidence presented, IT IS HEREBY ORDERED AND ADJUDGED," which appears on the first page of the Order and precedes all of the court's factual findings and legal conclusions. Furthermore, the trial court included factual findings in its Modification Order that went beyond the averments contained in the father's affidavit or the verified statements contained in his Motion to Modify Custody. Specifically, the trial court found in its Modification Order that the mother has refused to

On November 13, 2018, the mother filed a motion to vacate the Modification Order (the "Motion to Vacate"). Among other things, the mother argued that service of the Scheduling Order on her counsel by facsimile was insufficient under OCGA § 9-11-5 (b),[4] and that, as a result, the Modification Order should be vacated and the mother afforded an opportunity to travel to Georgia and be heard on the custody

_____

give the children's medical information to the father, that the two oldest children in the father's custody were "not only straight A students but also recipients of multiple awards for behavior, attendance and positive role models for their classmates, several having been received since the [original child custody] hearing in May [2018]," and that the mother "has access to the older children's school records and teachers but has never met the teachers nor inquired about their educational well-being."

[4] OCGA § 9-11-5 (b) provides in part:
Whenever under this chapter service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivering a copy to the person to be served or by mailing it to the person to be served at the person's last known address or, if no address is known, by leaving it with the clerk of the court. As used in this Code section, the term "delivery of a copy" means handing it to the person to be served or leaving it at the person to be served's office with a person in charge thereof or, if such office is closed or the person to be served has no office, leaving it at the person to be served's dwelling house or usual place of abode with some person of suitable age and discretion residing therein. "Delivery of a copy" also means transmitting a copy via e-mail in portable document format (PDF) to the person to be served using all e-mail addresses provided pursuant to subsection (f) of this Code section and showing in the subject line of the e-mail message the words "STATUTORY ELECTRONIC SERVICE" in capital letters. . . .

modification issues raised by the father. The trial court thereafter summarily denied the mother's Motion to Vacate. The mother then filed an application for discretionary review, which this Court granted, resulting in the present appeal.

1. As an initial matter, the father contends that the mother's appeal should be dismissed for lack of jurisdiction, but we reject his contention. The denial of a motion to set side a prior order in a child custody proceeding on the ground of inadequate notice of a hearing is subject to appeal by means of an application for discretionary review, as the mother properly pursued in this case. See *Voyles v. Voyles*, 301 Ga. 44, 47 (799 SE2d 160) (2017); *Landry v. Walsh*, 342 Ga. App. 283, 284 (1), n. 1 (801 SE2d 553) (2017). And while the father argues that the mother's motion should be construed as a "discretionary" motion to set aside or for reconsideration, the denial of which is not appealable in its own right,[5] the mother's motion instead is properly

[5] A "discretionary" motion to set aside or reconsider a prior trial court order does not rely upon any of the statutory grounds set forth in OCGA § 9-11-60 and instead "calls upon the court to exercise its inherent power to amend or modify those orders still within the breast of the court" and "is simply a request for the trial court to reconsider its decision." (Citation and punctuation omitted.) *Bell v. Cochran*, 244 Ga. App. 510, 511 (536 SE2d 187) (2000). An order denying a "discretionary" motion to set aside or reconsider a trial court's final order is not itself appealable and does not extend the time for filing a notice of appeal from the final order. See id.; *Stone v. Dawkins*, 192 Ga. App. 126, 127 (384 SE2d 225) (1989); *Savage v. Newsome*, 173 Ga. App. 271, 271 (326 SE2d 5) (1985). Compare *Mayor & Aldermen of City of Savannah v. Norman J. Bass Constr. Co.*, 264 Ga. 16, 17 (1) (441 SE2d 63) (1994) (order denying motion for reconsideration

construed as a motion to set aside the Modification Order pursuant to OCGA § 9-11-60, as discussed infra in Division 2. The trial court's denial of the mother's Motion to Vacate thus could be appealed through our discretionary appeal procedures. See *Voyles*, 301 Ga. at 47; *Ferguson v. Freeman*, 282 Ga. 180, 181 (1) (646 SE2d 65) (2007); *Landry*, 342 Ga. App. at 284 (1), n. 1. Accordingly, we have jurisdiction to hear this appeal.

2. The mother contends that service of the trial court's Scheduling Order on her counsel was defective on the face of the record because service by facsimile did not comply with the service requirements imposed by OCGA § 9-11-5 (b), and that the trial court therefore should have vacated the Modification Order and scheduled a new hearing where the mother could present testimony and evidence in opposition to the father's Motion to Modify Custody. We agree.

While the mother's Motion to Vacate did not expressly cite to a particular statute as a basis for vacating the Scheduling Order, her motion was in substance a motion brought pursuant to OCGA § 9-11-60 (d), which authorizes a trial court to set aside its judgment on certain narrow grounds, including "[a] nonamendable defect

of an interlocutory order can be appealed through this Court's interlocutory appeal procedure found in OCGA § 5-6-34 (b)).

7

which appears upon the face of the record or pleadings." OCGA § 9-11-60 (d) (3). See *Hiner Transport v. Jeter*, 293 Ga. App. 704, 706 (667 SE2d 919) (2008) (construing motion as motion to set aside under OCGA § 9-11-60 (d) (3) based on argument raised therein, although motion did not cite to that statute or use the specific term "nonamendable defect"). See generally *Nelson & Hill v. Wood*, 245 Ga. App. 60, 64 (2) (537 SE2d 670) (2000) ("There is no magic in nomenclature, and we judge pleadings, motions and orders not by their name but by their function and substance, being always mindful to construe such documents in a manner compatible with the best interests of justice."). A trial court's ruling on a motion to set aside a judgment under OCGA § 9-11-60 (d) (3) is reviewed for an abuse of discretion. *Nadel v. Branch Banking & Trust Co.*, 340 Ga. App. 213, 215 (797 SE2d 140) (2017).

The trial court abused its discretion in failing to set aside the Modification Order because the lack of proper notice of the hearing held on the father's Motion to Modify Custody appears on the face of the record. OCGA § 9-11-6 (d) provides in relevant part: "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than five days before the time specified for the hearing, unless a different period is fixed by this chapter or by order of the court." "When a hearing is held on any motion, OCGA § 9-11-6 (d) requires

8

notice of the hearing to be served on counsel, if for no other reason than to avoid the appearance of ex parte contact." (Citation and punctuation omitted.) *Glass v. Glover*, 241 Ga. App. 838, 838 (528 SE2d 262) (2000).

Service of the notice of a hearing pursuant to OCGA § 9-11-6 (d) is governed by OCGA § 9-11-5 (b). See *Cofield v. Halpern Enterprises*, 316 Ga. App. 582, 583-584 (730 SE2d 63) (2012). OCGA § 9-11-5 (b) provides that "[w]henever under this chapter service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party is ordered by the court." Such service "shall be made by delivering a copy to the person to be served or by mailing it to the person to be served at the person's last known address."[6] Id. Additionally, where counsel has consented under OCGA § 9-11-5 (f) to being served electronically, OCGA § 9-11-5 (b) provides that electronic service may be made by "transmitting a copy via e-mail in portable document format (PDF) to the person to be served using all e-mail addresses provided pursuant to subsection (f) of this Code section and showing in the subject line of the e-mail message the words 'STATUTORY ELECTRONIC SERVICE' in capital letters."

---

[6] Service also may be made to the court clerk where a party's address is unknown. OCGA § 9-11-5 (b).

"Compliance with the notice requirement of OCGA § 9-11-5 (b) is mandatory, not discretionary." (Punctuation and footnote omitted.) *Cofield*, 316 Ga. App. at 584. "An order that is based on a hearing and entered against a party without notice to that party of the hearing is subject to a motion to set aside on the ground of a nonamendable defect where the lack of notice appears on the face of the record." *Nadel*, 340 Ga. App. at 215. See *Randall v. Randall*, 274 Ga. 107, 109-110 (2) (549 SE2d 384) (2001); *Anderson v. Anderson*, 264 Ga. 88, 89 (441 SE2d 240) (1994); *Brown v. Citizens & S. Nat. Bank*, 245 Ga. 515, 518-519 (265 SE2d 791) (1980).

The trial court's Scheduling Order setting the date for a hearing on the father's Motion to Modify Custody was served on the mother's counsel by facsimile, as reflected on the face of the Scheduling Order and as undisputed by the parties. But service by facsimile is not one of the methods of service set out in OCGA § 9-11-5 (b), and we have held that forms of service other than those specified in that statutory subsection are insufficient to satisfy the requirements of OCGA § 9-11-6 (d) for providing counsel with notice of a hearing. See *Saturday Enterprises v. Citizens Bank & Trust of W. Ga.*, 308 Ga. App. 491, 492 (707 SE2d 875) (2011) (oral notice of hearing provided to counsel during teleconference insufficient to satisfy OCGA § 9-11-6 (d)); *TMS Ins. Agency v. Galloway*, 205 Ga. App. 896, 897-898 (424 SE2d 71)

10

(1992) (service by publication insufficient to satisfy OCGA § 9-11-6 (d)). Indeed, the General Assembly has expressly provided in other contexts that notice can be provided by facsimile[7] and therefore knew how to authorize service by facsimile if it chose to do so. Consequently, we must presume that the General Assembly's failure to include service by facsimile as a form of service under OCGA § 9-11-5 (b) was "a matter of considered choice." (Citation and punctuation omitted.) *Citibank (South Dakota), N. A. v. Graham*, 315 Ga. App. 120, 122 (1) (726 SE2d 617) (2012). The

---

[7] See OCGA §§ 33-52-4 (b) (providing, in context of assumption reinsurance agreements that: "A policyholder may also send its response card or other written notice by facsimile or other electronic transmission or by certified mail or statutory overnight delivery, express delivery, personal delivery, or courier service, in which case the response card or other written notice shall be deemed to have been received by the assuming insurer on the date of actual receipt by the transferring insurer."); 48-2-55 (c) (2) (providing, in context of levy by tax commissioner upon an account in or with a financial institution, that: "The commissioner or his authorized representative may, in lieu of personal service or service by mail, serve a levy upon a financial institution, and a financial institution may acknowledge service of a levy by telephonic facsimile transmission or by other means of instantaneous electronic transmission."); 48-7-108 (c) (providing, in context of tax commissioner providing notice of the amount of delinquency in payment of taxes by an employer, that: "In lieu of registered or certified mail or statutory overnight delivery, the notice may be served and the recipient may acknowledge service thereof by telephonic facsimile transmission or by other means of instantaneous electronic transmission."); 48-8-47 (noting, in context of tax commissioner providing notice to dealer of amount of delinquency in payment of taxes, that: "In lieu of registered or certified mail or statutory overnight delivery, the notice may be served and the recipient may acknowledge service thereof by telephonic facsimile transmission or by other means of instantaneous electronic transmission.").

trial court's service of the Scheduling Order by facsimile on the mother's counsel therefore failed to comply with OCGA §§ 9-11-5 (b) and 9-11-6 (d), as the father in fact concedes on appeal.[8] Accord *Clater v. State*, 266 Ga. 511, 513 (3) (467 SE2d 537) (1996) (service by facsimile failed to substantially comply with service requirements imposed by the Interstate Agreement on Detainer, where the plain language of the notice provision did not support notice by facsimile, and nothing in the provision "suggest[ed] that alternative forms of service [would] be deemed acceptable").

Where the face of the record shows that a party failed to receive notice of a hearing in the form contemplated by OCGA § 9-11-5 (b) and OCGA § 9-11-6 (d), the failure to provide proper notice constitutes a nonamendable defect that can justify the setting aside of the judgment under OCGA § 9-11-60 (d) (3).[9] See *Saturday*

[8] Although the mother's counsel received facsimiles as attachments to emails, service of the Scheduling Order cannot be alternatively construed as proper electronic notice under OCGA § 9-11-5 (b), given that there is nothing in the record reflecting that "STATUTORY ELECTRONIC SERVICE" was included in the subject line of the email generated for the facsimile as required by the statute.

[9] We note that OCGA § 9-11-60 (g) provides: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders." Under that subsection, a trial court is authorized to set aside an order to correct a clerical mistake, "where the clerical error or

12

*Enterprises*, 308 Ga. App. at 492; *King v. Bd. of Regents of the Univ. Sys. of Ga.*, 215 Ga. App. 570, 571 (451 SE2d 482) (1995). And, while "a violation of OCGA § 9-11-6 (d) is not a cause for reversal unless harm is shown," *MJL Properties v. Community & S. Bank*, 330 Ga. App. 524, 526-527 (1) (768 SE2d 111) (2015) (citation and punctuation omitted), the mother was clearly harmed by the lack of proper notice in this case in that it resulted in her not being afforded an opportunity to present testimony and evidence at the October 2 hearing before the trial court announced its custody ruling from the bench in favor of the father and the father's counsel stated that she would prepare an order to that effect. Additionally, the trial court's Modification Order included factual findings in part predicated on evidence submitted at the October 2 hearing, as explained supra in footnote 3. Moreover, while the failure of the mother's counsel to timely review his email correspondence may

---

omission is obvious on the face of the record" or "where there has been a hearing on a motion to correct the judgment, and the evidence compels the conclusion that the omission was in fact a clerical error." (Citation and punctuation omitted.) *Cagle v. Dixon*, 234 Ga. 698, 700 (217 SE2d 598) (1975). A trial court's failure to provide sufficient notice of a hearing can justify setting aside the judgment to correct a clerical mistake under OCGA § 9-11-60 (g). See *Voyles*, 301 Ga. at 45, n. 2 (motion to set aside the judgment for lack of sufficient notice of a hearing, where trial court conducted a hearing on the motion to set aside, construed as a motion to set aside the judgment to correct a clerical mistake under OCGA § 9-11-60 (g) rather than a motion to set aside based on a nonamendable defect on the face of the record under OCGA § 9-11-60 (d) (3)).

13

have been a contributing cause to the mother's failure to appear at the October 2 hearing, when a court considers "a motion to set aside under OCGA § 9-11-60 (d) (3), as opposed to (d) (2), negligence or fault on the part of the movant is not a bar to the movant's claims."[10] *Scott v. Scott*, 282 Ga. 36, 36-37 (1) (644 SE2d 842) (2007). See *Shields v. Gish*, 280 Ga. 556, 558 (2) (629 SE2d 244) (2006); *Hiner Transp.*, 293 Ga. App. at 706. Because the mother established the presence of a nonamendable defect on the face of the record, we reverse the denial of her motion to set aside the Modification Order under OCGA § 9-11-60 (d) (3). See *Saturday Enterprises*, 308 Ga. App. at 492; *King*, 215 Ga. App. at 571.

*Judgment reversed. Mercier, J., and Senior Appellate Judge Herbert E. Phipps concur*.

---

[10] OCGA § 9-11-60 (d) (2) provides: "A motion to set aside may be brought to set aside a judgment based upon: . . . Fraud, accident, or mistake or the acts of the adverse party *unmixed with the negligence or fault of the movant*." (Emphasis supplied.)